## ST. CLAIR *v.* COX.

1. The courts of the United States do not regard as valid or as importing verity a judgment *in personam* rendered by a State court for the recovery of a debt or demand, unless the defendant either entered a voluntary appearance, or he or some one authorized to receive process for him was personally cited to appear. *Pennoyer* v. *Neff*, 95 U. S. 714, cited and approved, and the doctrines announced in that case declared to be applicable to personal judgments against corporations.

2. Michigan permits foreign corporations to transact business within her limits, and when a suit by attachment is brought against one of them by a resident of the State, she authorizes the service of a copy of the writ, with a copy of the inventory of the property attached, on "any officer, member, clerk, or agent of such corporation" within the State, and declares that a personal service of a copy of the writ and of the inventory on one of these persons, shall have the force and effect of personal service of a summons on a defendant in suits commenced by summons. A., a resident, sued out of the Circuit Court of a county an attachment against a foreign corporation, and the officer to whom the writ was directed returned that by virtue of it he had seized and attached certain property, and served a copy of the writ, with a copy of the inventory of the attached property, on the defendant, by delivering the same personally, in said county, to B., agent of the said defendant. No appearance was entered by the corporation, and A. recovered a judgment *in personam* for the amount of his demand. The record of it was in another suit offered in evidence to support a plea of set-off, and an objection was made to its admissibility that the court which rendered the judgment had not jurisdiction of the parties. *Held*, 1. That the record was properly excluded, it not appearing therefrom that the corporation was doing business in the State at the time of the service of the writ on B. 2. Had that fact appeared, the corporation might have shown that his relations to it did not justify such service.

ERROR to the Circuit Court of the United States for the Eastern District of Michigan.

The facts are stated in the opinion of the court.

*Mr. Charles I. Walker* for the plaintiff in error.

*Mr. Henry M. Duffield* and *Mr. Levi T. Griffin* for the defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This action was brought by the plaintiff in the court below, to recover the amount due on two promissory notes of the defendants, each for the sum of $2,500, bearing date on the 2d of August, 1877, and payable five months after date, to the order

of the Winthrop Mining Company, at the German National Bank, in Chicago, with interest at the rate of seven per cent per annum.

To the action the defendants set up various defences, and, among others, substantially these: That the consideration of the notes had failed; that they were given, with two others of like tenor and amount, to the Winthrop Mining Company, a corporation created under the laws of Illinois, in part payment for ore and other property sold to the defendants upon a representation as to its quantity, which proved to be incorrect; that only a portion of the quantity sold was ever delivered, and that the value of the deficiency exceeded the amount of the notes in suit; that at the commencement of the action, and before the transfer of the notes to the plaintiff, the Winthrop Mining Company was indebted to the defendants in a large sum, viz. $10,000, upon a judgment recovered by them in the Circuit Court of Marquette County, in the State of Michigan, and that the notes were transferred to him after their maturity and dishonor, and after he had notice of the defences to them.

On the trial, evidence was given by the defendants tending to show that the plaintiff was not a *bona fide* holder of the notes for value. A certified copy of that judgment was also produced by them and offered in evidence; but on his objection that it had not been shown that the court had obtained jurisdiction of the parties, it was excluded, and to the exclusion an exception was taken. The jury found for him for the full amount claimed; and judgment having been entered thereon, the defendants brought the case here for review. The ruling of the court below in excluding the record constitutes the only error assigned.

The judgment of the Circuit Court in Michigan was rendered in an action commenced by attachment. If the plaintiffs in that action were, at its commencement, residents of the State, of which some doubt is expressed by counsel, the jurisdiction of the court, under the writ, to dispose of the property attached, cannot be doubted, so far as was necessary to satisfy their demand. No question was raised as to the validity of the judgment to that extent. The objection to it was as evi-

dence that the amount rendered was an existing obligation or debt against the company. If the court had not acquired jurisdiction over the company, the judgment established nothing as to its liability, beyond the amount which the proceeds of the property discharged. There was no appearance of the company in the action, and judgment against it was rendered for $6,450 by default. The officer, to whom the writ of attachment was issued, returned that, by virtue of it, he had seized and attached certain specified personal property of the defendant, and had also served a copy of the writ, with a copy of the inventory of the property attached, on the defendant, "by delivering the same to Henry J. Colwell, Esq., agent of the said Winthrop Mining Company, personally, in said county."

The laws of Michigan provide for attaching property of absconding, fraudulent, and non-resident debtors and of foreign corporations. They require that the writ issued to the sheriff, or other officer by whom it is to be served, shall direct him to attach the property of the defendant, and to summon him if he be found within the county, and also to serve on him a copy of the attachment and of the inventory of the property attached. They also declare that where a copy of the writ of attachment has been personally served on the defendant, the same proceedings may be had thereon in the suit in all respects as upon the return of an original writ of summons personally served where suit is commenced by such summons. 2 Comp. Laws, 1871, sects. 6397 and 6413.

They also provide, in the chapter regulating proceedings by and against corporations, that " suits against corporations may be commenced by original writ of summons, or by declaration, in the same manner that personal actions may be commenced against individuals, and such writ, or a copy of such declaration, in any suit against a corporation, may be served on the presiding officer, the cashier, the secretary, or the treasurer thereof; or, if there be no such officer, or none can be found, such service may be made on such other officer or member of such corporation, or in such other manner as the court in which such suit is brought may direct; " and that " in suits commenced by attachment in favor of a resident of this State against any corporation created by or under the laws of any other State,

government, or country, if a copy of such attachment and of the inventory of property attached shall have been personally served on any officer, member, clerk, or agent of such corporation within this State, the same proceedings shall be thereupon had, and with like effect, as in case of an attachment against a natural person, which shall have been returned served in like manner upon the defendant." 2 Comp. Laws, 1871, sects. 6544 and 6550.

The courts of the United States only regard judgments of the State courts establishing personal demands as having validity or as importing verity where they have been rendered upon personal citation of the party, or, what is the same thing, of those empowered to receive process for him, or upon his voluntary appearance.

In *Pennoyer* v. *Neff* we had occasion to consider at length the manner in which State courts can acquire jurisdiction to render a personal judgment against non-residents which would be received as evidence in the Federal courts; and we held that personal service of citation on the party or his voluntary appearance was, with some exceptions, essential to the jurisdiction of the court. The exceptions related to those cases where proceedings are taken in a State to determine the status of one of its citizens towards a non-resident, or where a party has agreed to accept a notification to others or service on them as citation to himself. 95 U. S. 714.

The doctrine of that case applies, in all its force, to personal judgments of State courts against foreign corporations. The courts rendering them must have acquired jurisdiction over the party by personal service or voluntary appearance, whether the party be a corporation or a natural person. There is only this difference: a corporation being an artificial being, can act only through agents, and only through them can be reached, and process must, therefore, be served upon them. In the State where a corporation is formed it is not difficult to ascertain who are authorized to represent and act for it. Its charter or the statutes of the State will indicate in whose hands the control and management of its affairs are placed. Directors are readily found, as also the officers appointed by them to manage its business. But the moment the boundary

of the State is passed difficulties arise; it is not so easy to determine who represent the corporation there, and under what circumstances service on them will bind it.

Formerly it was held that a foreign corporation could not be sued in an action for the recovery of a personal demand outside of the State by which it was chartered. The principle that a corporation must dwell in the place of its creation, and cannot, as said by Mr. Chief Justice Taney, migrate to another sovereignty, coupled with the doctrine that an officer of the corporation does not carry his functions with him when he leaves his State, prevented the maintenance of personal actions against it. There was no mode of compelling its appearance in the foreign jurisdiction. Legal proceedings there against it were, therefore, necessarily confined to the disposition of such property belonging to it as could be there found; and to authorize them legislation was necessary.

In *McQueen* v. *Middleton Manufacturing Co.*, decided in 1819, the Supreme Court of New York, in considering the question whether the law of that State authorized an attachment against the property of a foreign corporation, expressed the opinion that a foreign corporation could not be sued in the State, and gave as a reason that the process must be served on the head or principal officer within the jurisdiction of the sovereignty where the artificial body existed; observing that if the president of a bank went to New York from another State he would not represent the corporation there; and that "his functions and his character would not accompany him when he moved beyond the jurisdiction of the government under whose laws he derived this character." 16 Johns. (N. Y.) 5. The opinion thus expressed was not, perhaps, necessary to the decision of the case, but nevertheless it has been accepted as correctly stating the law. It was cited with approval by the Supreme Court of Massachusetts, in 1834, in *Peckham* v. *North Parish in Haverhill*, the court adding that all foreign corporations were without the jurisdiction of the process of the courts of the Commonwealth. 16 Pick. (Mass.) 274. Similar expressions of opinion are found in numerous decisions, accompanied sometimes with suggestions that the doctrine might be otherwise if the foreign corporation sent its

officer to reside in the State and transact business there on its account. *Libbey* v. *Hodgdon*, 9 N. H. 394; *Moulin* v. *Trenton Insurance Co.*, 24 N. J. L. 222.

This doctrine of the exemption of a corporation from suit in a State other than that of its creation was the cause of much inconvenience, and often of manifest injustice. The great increase in the number of corporations of late years, and the immense extent of their business, only made this inconvenience and injustice more frequent and marked. Corporations now enter into all the industries of the country. The business of banking, mining, manufacturing, transportation, and insurance is almost entirely carried on by them, and a large portion of the wealth of the country is in their hands. Incorporated under the laws of one State, they carry on the most extensive operations in other States. To meet and obviate this inconvenience and injustice, the legislatures of several States interposed, and provided for service of process on officers and agents of foreign corporations doing business therein. Whilst the theoretical and legal view, that the domicile of a corporation is only in the State where it is created, was admitted, it was perceived that when a foreign corporation sent its officers and agents into other States and opened offices, and carried on its business there, it was, in effect, as much represented by them there as in the State of its creation. As it was protected by the laws of those States, allowed to carry on its business within their borders, and to sue in their courts, it seemed only right that it should be held responsible in those courts to obligations and liabilities there incurred.

All that there is in the legal residence of a corporation in the State of its creation consists in the fact that by its laws the corporators are associated together and allowed to exercise as a body certain functions, with a right of succession in its members. Its officers and agents constitute all that is visible of its existence; and they may be authorized to act for it without as well as within the State. There would seem, therefore, to be no sound reason why, to the extent of their agency, they should not be equally deemed to represent it in the States for which they are respectively appointed when it is called to legal responsibility for their transactions.

The case is unlike that of suits against individuals. They can act by themselves, and upon them process can be directly served, but a corporation can only act and be reached through agents. Serving process on its agents in other States, for matters within the sphere of their agency, is, in effect, serving process on it as much so as if such agents resided in the State where it was created.

A corporation of one State cannot do business in another State without the latter's consent, express or implied, and that consent may be accompanied with such conditions as it may think proper to impose. As said by this court in *Lafayette Insurance Co.* v. *French,* "These conditions must be deemed valid and effectual by other States and by this court, provided they are not repugnant to the Constitution or laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each State from encroachment by all others, or that principle of natural justice which forbids condemnation without opportunity for defence." 18 How. 404, 407 ; *Paul* v. *Virginia,* 8 Wall. 168.

The State may, therefore, impose as a condition upon which a foreign corporation shall be permitted to do business within her limits, that it shall stipulate that in any litigation arising out of its transactions in the State, it will accept as sufficient the service of process on its agents or persons specially designated ; and the condition would be eminently fit and just. And such condition and stipulation may be implied as well as expressed. If a State permits a foreign corporation to do business within her limits, and at the same time provides that in suits against it for business there done, process shall be served upon its agents, the provision is to be deemed a condition of the permission ; and corporations that subsequently do business in the State are to be deemed to assent to such condition as fully as though they had specially authorized their agents to receive service of the process. Such condition must not, however, encroach upon that principle of natural justice which requires notice of a suit to a party before he can be bound by it. It must be reasonable, and the service provided for should be only upon such agents as may be properly deemed representatives of the foreign corporation. The decision of this

court in *Lafayette Insurance Co.* v. *French,* to which we have already referred, sustains these views.

The State of Michigan permits foreign corporations to transact business within her limits. Either by express enactment, as in the case of insurance companies, or by her acquiescence, they are as free to engage in all legitimate business as corporations of her own creation. Her statutes expressly provide for suits being brought by them in her courts ; and for suits by attachment being brought against them in favor of residents of the State. And in these attachment suits they authorize the service of a copy of the writ of attachment, with a copy of the inventory of the property attached, on " any officer, member, clerk, or agent of such corporation " within the State, and give to a personal service of a copy of the writ and of the inventory on one of these persons the force and effect of personal service of a summons on a defendant in suits commenced by summons.

It thus seems that a writ of foreign attachment in that State is made to serve a double purpose, — as a command to the officer to attach property of the corporation, and as a summons to the latter to appear in the suit. We do not, however, understand the laws as authorizing the service of a copy of the writ, as a summons, upon an agent of a foreign corporation, unless the corporation be engaged in business in the State, and the agent be appointed to act there. We so construe the words " agent of such corporation within this State." They do not sanction service upon an officer or agent of the corporation who resides in another State, and is only casually in the State, and not charged with any business of the corporation there. The decision in *Newell* v. *Great Western Railway Co.,* reported in the 19th of Michigan Reports, supports this view, although that was the case of an attempted service of a declaration as the commencement of the suit. The defendant was a Canadian corporation owning and operating a railroad from Suspension Bridge in Canada to the Detroit line at Windsor opposite Detroit, and carrying passengers in connection with the Michigan Central Railroad Company, upon tickets sold by such companies respectively. The suit was commenced in Michigan, the declaration alleging a contract by the defendant to carry the plaintiff over its road, and its violation of the contract by

removing him from its cars at an intermediate station. The declaration was served upon Joseph Price, the treasurer of the corporation, who was only casually in the State. The corporation appeared specially to object to the jurisdiction of the court, and pleaded that it was a foreign corporation, and had no place of business or agent or officer in the State, or attorney to receive service of legal process, or to appear for it; and that Joseph Price was not in the State at the time of service on him on any official business of the corporation. The plaintiff having demurred to this plea, the court held the service insufficient. " The corporate entity," said the court, " could by no possibility enter the State, and it could do nothing more in that direction than to cause itself to be represented here by its officers or agents. Such representation would, however, necessarily imply something more than the mere presence here of a person possessing, when in Canada, the relation to the company of an officer or agent. To involve the representation of the company here, the supposed representative would have to hold or enjoy in this State an actual present official or representative status. He would be required to be here as an agent or officer of the corporation, and not as an isolated individual. If he should drop the official or representative character at the frontier, if he should bring that character no further than the territorial boundary of the government to whose laws the corporate body itself, and consequently the official positions of its officers also, would be constantly indebted for existence, it could not, with propriety, be maintained that he continued to possess such character by force of our statute. Admitting, therefore, for the purpose of this suit, that in given cases the foreign corporation would be bound by service on its treasurer in Michigan, this could only be so when the treasurer, *the then official, the officer then in a manner impersonating the company, should be served.* Joseph Price was not here as the treasurer of the defendants. He did not then represent them. His act in coming was not the act of the company, nor was his remaining the business or act of any besides himself. He had no principal, and he was not an agent. He had no official status or representative character in this State." p. 344.

According to the view thus expressed by the Supreme Court

of Michigan, service upon an agent of a foreign corporation will not be deemed sufficient, unless he represents the corporation in the State. This representation implies that the corporation does business, or has business, in the State for the transaction of which it sends or appoints an agent there. If the agent occupies no representative character with respect to the business of the corporation in the State, a judgment rendered upon service on him would hardly be considered in other tribunals as possessing any probative force. In a case where similar service was made in New York upon an officer of a corporation of New Jersey accidentally in the former State, the Supreme Court of New Jersey said, that a law of another State which sanctioned such service upon an officer accidentally within its jurisdiction was "so contrary to natural justice and to the principles of international law, that the courts of other States ought not to sanction it." *Moulin* v. *Trenton Insurance Co.*, 24 N. J. L. 222, 234.

Without considering whether authorizing service of a copy of a writ of attachment as a summons on some of the persons named in the statute — a member, for instance, of the foreign corporation, that is, a mere stockholder — is not a departure from the principle of natural justice mentioned in *Lafayette Insurance Co.* v. *French*, which forbids condemnation without citation, it is sufficient to observe that we are of opinion that when service is made within the State upon an agent of a foreign corporation, it is essential, in order to support the jurisdiction of the court to render a personal judgment, that it should appear somewhere in the record — either in the application for the writ, or accompanying its service, or in the pleadings or the finding of the court — that the corporation was engaged in business in the State. The transaction of business by the corporation in the State, general or special, appearing, a certificate of service by the proper officer on a person who is its agent there would, in our opinion, be sufficient *prima facie* evidence that the agent represented the company in the business. It would then be open, when the record is offered as evidence in another State, to show that the agent stood in no representative character to the company, that his duties were limited to those of a subordinate employé, or to a particular

transaction, or that his agency had ceased when the matter in suit arose.

In the record, a copy of which was offered in evidence in this case, there was nothing to show, so far as we can see, that the Winthrop Mining Company was engaged in business in the State when service was made on Colwell. The return of the officer, on which alone reliance was placed to sustain the jurisdiction of the State court, gave no information on the subject. It did not, therefore, appear even *prima facie* that Colwell stood in any such representative character to the company as would justify the service of a copy of the writ on him. The certificate of the sheriff, in the absence of this fact in the record, was insufficient to give the court jurisdiction to render a personal judgment against the foreign corporation. The record was, therefore, properly excluded.

*Judgment affirmed.*