## HAZELTINE v. MISSISSIPPI VAL. FIRE INS. CO.

(Circuit Court, W. D. Tennessee. April 14, 1893.)

No. 2,357.

1. ACTION AGAINST NONRESIDENT INSURANCE COMPANY—SUBSTITUTED SERVICE.
Rev. St. Me. tit. 4, c. 49, § 63, providing that "any person having a claim against a foreign insurance company may bring a suit therefor in this state," etc., and that, in case no agent can be found, on whom such service can be had, service may be made on the insurance commissioner of the state, is applicable only to insurance companies which are, or have been, doing business in the state.

2. SAME—ACTION ON FOREIGN JUDGMENT—JURISDICTIONAL AVERMENTS.
In an action brought in another state on a judgment so recovered, the record of such judgment must affirmatively show such jurisdictional fact.

3. SAME—DOING BUSINESS IN STATE—INSURANCE BROKER—EVIDENCE.
In such an action it appeared that the insured resided, and the property was located, in the state of Maine; that the insurance company was a Tennessee corporation having no office nor agent in Maine; and that the insurance was effected by correspondence through the mails. Held, in consideration of a further provision of such statute requiring insurance companies "doing business" in the state to procure a license for that purpose, that these facts did not constitute a carrying on of business in the state of Maine by defendant so as to entitle plaintiff to substituted service.

At Law. Action by William Hazeltine, for the use of another, against the Mississippi Valley Fire Insurance Company on a foreign judgment obtained by plaintiff against defendant. Verdict for plaintiff set aside, and judgment entered for defendant.

Statement by HAMMOND, J.:

This action was brought in 1878 by the plaintiff, for the use of another, upon a judgment rendered against the defendant in the state of Maine in 1876. The defendant pleads—First, nul tiel record; second, that it is and was, etc., a corporation of Tennessee, having its situs at Memphis, "and was not served with process, and had no notice whatever of the pending of said action, [in Maine,] and that it never appeared thereto in person or by attorney;" and, third, "that neither through its officers or agents had it been a citizen of the state of Maine, nor had it, through its officers or agents, ever entered into a contract of insurance, or done or performed any act or thing whatever, within

the state of Maine; and at all times from its organization to the present time defendant has been a nonresident of the state of Maine, and never had an agent in said state, and had never authorized any one in the state of Maine to accept service of process for it," etc. The record of the judgment sued on shows that the writ commanded the sheriff "to attach the goods and estate of the Mississippi Valley Insurance Company, of Memphis, Tennessee, a corporation existing by law, and having no agent in this state that can be found, to the value of two thousand dollars, and summon the said defendant (if he may be found in your precinct) to appear * * * to answer unto William Hazeltine, of Lovell, in said county of Oxford." The sheriff's return to the writ is as follows: "By virtue of this writ I have summoned the Mississippi Valley Insurance Company, of Memphis, Tenn., within named, to appear at court, as within directed, by giving to Joshua Nye, insurance commissioner for the state of Maine, an attested copy of this writ, said company having no agent in this state on whom to make service." There was no attachment of defendant's property by the sheriff, and no appearance by or for the defendant company, and the judgment was by default. The suit was brought upon the defendant's $1,000 fire insurance policy, for one year, upon a sawmill building in the state of Maine belonging to the plaintiff, to recover thereunder its loss by fire; and the declaration alleges that, the plaintiff being the owner of the building, the defendant, "in consideration of a premium in money then and there paid to them therefor by the plaintiff, made a policy of insurance upon the same," etc., "and thereby promised the plaintiff to insure upon said property the sum of one thousand dollars, * * * to be paid sixty days after due notice and proofs of loss shall have been made by the assured, and received at the branch office of the company in New York." There is no allegation of the place where this contract of insurance was entered into. The policy was "countersigned at New York city" and dated November 28, 1874, and the summons was served on the insurance commissioner May 22, 1876, and the judgment rendered September 29, 1876. The policy sued on is not exhibited in the transcript of the record.

The following provisions of the Revised Statutes of Maine, (title 4, c. 49,) relating to "Foreign Insurance Companies and Agencies," as amended previously to the cause of action so sued upon, are relied upon to support the service of process in the case. "Sec. 63. Any person having a claim against any foreign insurance company may bring a suit therefor in the courts of this state, including trustee suits, and service made on any authorized agent of said company shall be valid and binding on the company, and hold it to answer to such suit; and the judgment rendered therein shall bind the company as a valid judgment in every respect, whether the defendants appear or not. In case no agent of such company can be found, such notice or service served on the state insurance commissioner, who shall immediately notify said insurance company by mail, shall be valid and binding on the company as though served on their agent. Unless any such judgment is paid within thirty days after demand made upon any such agent or the insurance commissioner, the commissioner may, on notice and hearing of the parties, suspend the power of the company to do business in this state until it is paid; and if the company, or any agent thereof, issues any policy in this state during such suspension, said company and agent shall each forfeit one hundred dollars. Sec. 64. All notices and processes which, by any law, by-law, or provision of any policy, any insured or other person has occasion to give or serve on any such company, may be given or served on its agent, or on the insurance commissioner as provided in said section 63, with like effect as if given or served on the principal. Such agents, and the agents of all domestic companies, shall be regarded as in the place of the company in all respects regarding any insurance effected by them. * * *"

Foreign insurance companies are by statute prohibited from transacting any insurance business in the state of Maine without obtaining license therefor, which authorizes it to do such business "subject to the laws of the state;" and the agents of foreign companies so licensed must themselves be licensed by the state, as well as insurance brokers, "to negotiate contracts of insurance, and to effect insurance for others than himself for a compensation, and

by virtue thereof he may place risks or effect insurance with any company of this state, or with the agents of any foreign insurance company who have been licensed to do an insurance business in this state, but with no other." Rev. St. Me. c. 49, §§ 49–51.

This record does not show that the defendant company or any agent of or broker for it, was ever licensed by the state under its statute. Upon the trial of the suit here upon this record, a verdict was directed for the plaintiff, and judgment rendered thereon, under the following stipulation: "But this judgment is rendered by the court with the distinct agreement of the parties, made in open court, that if, upon investigation by the court hereafter, the court should be of the opinion that the service of process in the suit in which the judgment here sued on was illegal and of no effect, then this verdict and judgment are to be set aside, and judgment for the defendant entered in place thereof." Before the trial defendant filed an amendment to his declaration, by an additional count upon the insurance policy, in the very language used in stating his cause of action in the Maine court, and made profert here of the policy there sued on. To this the defendant demurred, and its demurrer was allowed.

Miller & Gillham and R. D. Jordan, for plaintiff.
L. B. Eaton, for defendant.

HAMMOND, J., (after stating the facts.) The policy which is the basis of the judgment here sued on, as well as the proof on the subject, showed that it was signed by the president and secretary here in Memphis, at its home office, and sent to New York city, where the company had a branch office and agent, to be countersigned there by the agent before it took effect and before delivery; that it never had an office or agency or an agent in the state of Maine; that it was never licensed to do business in that state, nor was any agent ever so licensed to do business for it, and that no broker was ever licensed in Maine, so far as the company knew, or with its authority or consent, to effect insurance with it, either directly or through its agents. In the late case of Construction Co. v. Fitzgerald, 137 U. S. 98, 106, 11 Sup. Ct. Rep. 36, the general doctrine of service upon a foreign corporation is thus stated:

"Where a foreign corporation is not doing business in a state, and the president, or any other officer, is not there transacting business for the corporation and representing it in the state, it cannot be said that the corporation is within the state, so that service can be made upon it. St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. Rep. 354; Insurance Co. v. Woodworth, 111 U. S. 138, 4 Sup. Ct. Rep. 364; Ex parte Schollenberger, 96 U. S. 369."

In St. Clair v. Cox, so cited, the validity of the judgment in controversy was denied for want of proper service on the defendant foreign corporation, the same having been made on an alleged "agent" of the company. By the laws of Michigan, service in attachment suits against a nonresident corporation could be made "on any officer, member, clerk, or agent of such corporation within this state," which language the supreme court construes as not "authorizing the service of a copy of the writ, as a summons, upon the agent of a foreign corporation, unless the corporation be engaged in business in the state, and the agent be appointed to act there." The Maine statute here provides that service may be "made on any authorized agent" of a foreign insurance company, and, in case judgment is not paid, the insurance commissioner may "suspend

the power of the company to do business in this state." It is conceded by the plaintiff that there has been no decision by the Maine supreme court construing this legislation, so far as service upon the insurance commissioner is provided for, viz. "in case no agent of such company can be found." It will be observed that, in the record of the judgment sued on, the writ commands the sheriff to attach the property of the defendant, "having no agent in this state that can be found," and to summon the defendant, "if he [it] may be found," and that the officer's return shows that there was "no agent in this state on whom to make service." This Maine statute, taken altogether, shows affirmatively, and not by implication merely, that its various provisions were only intended to apply to such foreign insurance companies as "shall transact any insurance business in this state," and only such could be licensed. Chapter 49, § 49. Its agent can be licensed only when the company itself "has received a license to do an insurance business in the state," (Id. § 50,) and a like limitation is imposed on the granting of licenses to insurance brokers, (Id. § 51,) and under certain circumstances the commissioner may suspend the right of a licensed foreign insurance company "to do business in the state," (Id. § 52,) and the legal procedure is provided for appointing receivers "when any foreign insurance company doing business in the state is dissolved," (Id. § 53.) "Every foreign insurance company doing business in the state" must make annual report of its condition, and publish the same. Id. §§ 54, 55. The commissioner is required to report to the legislature the condition of all such companies "doing business in this state, with the names and locations of their authorized agents in this state," (Id. §§ 56, 57,) and no such foreign company "shall be permitted to do business in the state" unless it has certain paid-up capital, (Id. § 62.) Hence it would seem that the provision quoted, by which substituted service is authorized to be made upon the insurance commissioner, was intended by the legislature to apply only to such foreign insurance companies as were at the time, or at least had been, doing business in the state, or had at the time, or had had, agents therein doing business for it, who could not be found. Such is the literalism of the statute, said service being provided "in case no agent of such company can be found." This construction is certainly a reasonable one, and would and does provide against the inconvenience and hardship, otherwise, and in the absence of any such or kindred legislation, of compelling the citizens of the state to follow to its domicile of incorporation the insurance company with which he had done business at home, in order to collect a loss under its policy to him, after the company had ceased to do business in the state, or had withdrawn its agents, either voluntarily or by act of the state under its insurance laws shown above.

If, therefore, the construction given by the supreme court to the Michigan legislation in St. Clair v. Cox, supra, be correct, it follows irresistibly that substituted service, or service upon an "authorized agent" even, in Maine, can only be supported in case the defendant company is at the time of suit, or has previously been, "doing busi-

ness" in the state. The record here does not show that fact, but in effect substantially negatives it, while the pleas and proof of the defendant affirmatively show that it never did business, or had an agent or officer or attorney, in the state. In that decision the supreme court of the United States says:

"We are of the opinion that, when service is made within the state upon an agent of a foreign corporation, it is essential, in order to support the jurisdiction of the court to render a personal judgment, that it should appear somewhere in the record—either in the application for the writ or accompanying its service, or in the pleadings or finding of the court—that the corporation was engaged in business in the state."

The record of this judgment shows only that the property insured was located in Maine, and that the plaintiff resided there, and "was interested" in it. It does not show where the policy was executed, where it was delivered, where he gave notice to defendant of the loss, or where he delivered to it the proofs thereof, though presumably, if at all, (which is denied by defendant,) the notice and proofs were sent to New York, where the policy was countersigned, and where the loss was "to be paid, sixty days after due notice and proofs of the same shall have been made by the assured, and received at the branch office of the company in New York, in accordance with the terms and conditions of said policy."

But the plaintiff here contends that "the very act of insuring property situated in the state of Maine is of necessity 'doing business in the state;'" and he necessarily concedes that the defendant company did not have "an office or an agent in the state." There is no proof here that the company ever issued other fire policies covering property in that state, and the question simply is whether the insurance, by correspondence, of property in a state belonging to a resident therein by a foreign insurance company, is carrying on or doing business in such state. If A., a resident of Maine, should, while at Memphis, personally procure insurance on his property there, in a Memphis company, and immediately pay the premium, could it be insisted that the transaction was a Maine one? Or if the owner of a ship or cargo at sea, or in a foreign port, should himself, at Memphis, so effect insurance thereon in such company, would it be contended that the transaction was other than a contract made in Tennessee, or that the business was done elsewhere than in this state? Or, in the case first put, would the fact that the business was negotiated by correspondence make it any less business done here? In the familiar case of U. S. v. American Bell Tel. Co., 29 Fed. Rep. 17, 35, Judge Jackson, in treating of this subject, says:

"It cannot be held sufficient to give this court jurisdiction in personam over a foreign corporation, that it has property rights, however extensive, within the district, or that it has pecuniary interests, however valuable, in business managed and conducted by others. It must itself be carrying on business in its own right, on its own responsibility, and for its own account, and through or by means of its own agents, officers, or representatives, in order to bring it within the operation of the laws of a state other than that in which it is incorporated, making it amenable to a suit there as a condition of its doing business in such state."

An Ohio statute was involved in that suit, which the court construed as applying "only to such foreign corporations as carry on business in the state," using this language:

"When a foreign corporation carries on its corporate business, or some substantial part thereof, in this state, by means of an agent or representative appointed to act here, and having the charge and management of such business, it impliedly assents to be found and sued here in the person of such agent."

In Clews v. Iron Co., 44 Fed. Rep. 31, the president of an Alabama corporation, who resided there, was in New York city for the purpose of negotiating its bonds, and it was held that service upon him in New York was invalid in a suit against the corporation, as by this transaction the defendant could not be held to be engaged in business in the state. "The only business which it did," says the court, "was the borrowing of money upon its bonds and mortgage, and the obtaining from the stock exchange of the privilege of having such bonds called on the list of securities dealt in on its floor. It could apparently have secured this privilege, and could have sold its bonds by correspondence. It kept no office here. It did not continuously, or even for a period of some duration, carry on here the business which it was organized to carry on, and by the regular transaction of which it gave evidence of its continued existence." So, in Good Hope Co. v. Railway Barb Fencing Co., 22 Fed. Rep. 635, where service was made on the president of the defendant foreign corporation which had no office or place of business within the state, and was not engaged in business there except occasionally, to purchase goods by an agent sent there for that purpose, the service was vacated, although when made the president was in the state to adjust a controversy with the plaintiff growing out of such a purchase; the decision being based on the ground that "the corporation had never been practically engaged in business here. It had made purchases here occasionally, but it could have made them by correspondence as well as by the presence of its agents here. If the purchases had been made by correspondence, it could be as logically urged that the corporation was engaged in doing business here as it can be now." And on the same principle, under similar facts, was the like decision in St. Louis Wire-Mill Co. v. Consolidated Barb-Wire Co., 32 Fed. Rep. 802. Judge Brewer ruled, in Carpenter v. Air-Brake Co., Id. 434, that valid service could not be had upon the foreign defendant corporation by service upon its officers and agents who were running a train of cars in Iowa for the purpose of exhibiting its air brake, the train not carrying freight or passengers for hire; Love and Shiras, JJ., concurring in the decision.

The question here presented was considered by this court quite at length in 1886 in the case of Henning v. Insurance Co., 28 Fed. Rep. 440, which was a suit on a judgment obtained in Illinois against the defendant upon service on an agent of the company there, which was a Tennessee corporation, whose home office was in Memphis. It had no office in Illinois, and no agent there, as required by the law of that state. The insurance was effected

through a broker in Chicago, "the business all being done by mail." The policies were executed here, and "sent to and delivered at Chicago." The "agent" served was the broker, and the property insured was in Minnesota, but the residence or citizenship of the plaintiff was not shown. Following St. Clair v. Cox, supra, the defendant's objection to the introduction of the record was sustained, because it did not show that the defendant was doing business in Illinois. What facts are necessary to constitute doing business within a state was not considered by me in the opinion in that case, because the judgment on the preliminary question presented made such an inquiry unnecessary. In Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. Rep. 739, the plaintiff, an Ohio corporation, sued the defendants, who were citizens of Colorado, in the latter state, on a contract made there to sell and deliver to them on the cars in Ohio certain machinery. The statute of Colorado required a foreign corporation, before doing business in the state, to file a certain certificate in the county "in which such business is carried on, designating the principal place where the business of such corporation is carried on in the state, and an authorized agent or agents in the state residing at its principal place of business upon whom process may be served." The defendants pleaded that the plaintiff had not filed such certificate, and had no place of business in the state, nor agents upon whom process could be served. Plaintiff's demurrer to this plea was overruled below, and the judgment of the circuit court reversed in the supreme court after two arguments. The constitution of that state provides that "no foreign corporation shall do any business" in the state without having a known place of business, and agents on whom process may be served. Mr. Justice Woods, for the court, in the opinion says:

"Reasonably construed, the constitution and statute of Colorado forbids, not the doing of a single act of business in the state, but the carrying on of business by a foreign corporation without the filing of the certificate and the appointment of an agent, as required by the statute. * * * The making in Colorado of the one contract sued on in this case, by which one party agreed to build and deliver in Ohio certain machinery, and the other party to pay for it, did not constitute a carrying on of business in Colorado."

While the facts of the case at bar are not identical in every respect with those in any of the cases just cited, the principles which controlled those judgments apply here, and are controlling, in favor of the defendant.

The English cases also support this judgment, and it may be useful to refer to them as showing how the elastic phrase "carrying on business" or "doing business" gives trouble everywhere, and seems to need legislative definition, or else that it should be abandoned for something more explicit. I have gathered some of the more important English cases, though by no means all of them, and they show there as here a curious vacillation of understanding of this phrase. Until very recent years no case of suing a foreign corporation in the common-law courts of England could be found, it is said; but from very early times corporations were allowed to sue as plaintiffs. The judges began to protest against the want of recipro-

cal fairness in this, and, by an enlargement of the language of modern practice and procedure, acts of parliament, and rules of court prescribed in pursuance of them, they were subjected to suit as defendants. But the narrowest possible limitation was evolved out of the perplexities of the subject, somewhat due, no doubt, to the sensitive jealousy of the Scottish courts to the exercise of jurisdiction over Scottish companies by the English courts. They established the rule, finally, that the foreign corporation must be, in a sense, domiciled in England, very much as if it had been chartered there. The courts say, in trying to define the limitation: Carrying on trade or trafficking in England, even by the instrumentalities of permanent local agents or other appliances, does not necessarily establish this suable domicile for the company; it depends largely upon the nature of the home and foreign business,—what is done in either or both places in carrying on the enterprise of the company; and even the perpetual running of a foreign railroad upon English soil is held not to be enough,—not to be "doing business" in England in the sense of this suable quality or liability in a foreign corporation. There must be a managing, controlling, or governmental business done by the corporation in England,—a sort of "branch" of the foreign company established there. The phrase is also instructively considered in cases relating to the suits brought against domestic English companies in the several counties of England under acts of parliament regulating the jurisdiction or venue for the local courts. There it received the same construction, though there was some relief against this by a separate rule of jurisdiction in places where the cause of action arose or the injury was done. I cite the cases chronologically, without attempting to distribute them here. Wilson v. Railroad Co., 5 Exch. 822; Iron Co. v. Maclaren, 5 H. L. Cas. 416, 458; Ingate v. Lloyd Austria Co., 4 C. B. (N. S.) 704; Shields v. Railroad Co., 7 Jur. (N. S.) 631; Newby v. Von Oppen, L. R. 7 Q. B. 293; Mackereth v. Railroad Co., L. R. 8 Exch. 149; Jones v. Insurance Co., 17 Q. B. Div. 421; Lhoneux v. Banking Corp., 33 Ch. Div. 446; Watkins v. Insurance Co., 23 Q. B. Div. 285; Haggin v. Comptoir d'Escompte de Paris, Id. 519; Palmer v. Railroad Co., [1892] 1 Q. B. 823.

The truth about the matter is that while the obvious spirit of the thing contemplated by our states is that, in the exercise of their dominion over the persons and things situated within their territory, and their conceded power to regulate the terms upon which foreign corporations shall be admitted to traffic with those persons and about those things, they desire to provide, with commendable justice, that whenever the cause of action arises or relates to the persons and things within their respective dominion by the destruction of the property insured, or other injury or breach of contract, these companies shall submit to judgment there, and the citizens of that state shall not be forced to go to a distant jurisdiction, to the corporate domicile, to bring their suit or to get their money. But they do not use apt words to compel this, and the courts, on the language we have here, must rule, upon the cases we cite, that that

object has not been accomplished. The remedy is to amend the legislation, and define the conditions upon which the companies may act, more explicitly.

Without attempting to decide or define what would be, in any given case, the doing of business by a foreign insurance company in a state other than that of its incorporation, it is sufficient for the purposes of this decision that the facts here do not constitute the carrying on of its business by this defendant in the state of Maine; and especially is this so in view of the legislation of that state upon the subject. It follows, therefore, that the service upon the insurance commissioner was not valid to support the judgment sued upon. This would certainly be so in the absence of such legislation, and is probably as certainly so under it. Let the judgment heretofore entered in favor of the plaintiff be set aside, and a judgment entered in favor of the defendant under the stipulation entered into at the time, with costs against the plaintiff and the surety on his cost bond. So ordered.