## STRAIN v. CHICAGO PORTRAIT CO.

### (Circuit Court, W. D. Missouri, W. D. November 28, 1903.)

### No. 2,804.

1. FOREIGN CORPORATIONS—SERVICE OF PROCESS ON AGENT—VALIDITY.

In general, where it is sought to bind a corporation by service of process on an agent or employé in another state, such agent or employé should sustain such relation to the matter, growing out of the character of his employment, as would impose on him the duty to report the fact to his principal or employer.

2. SAME—MISSOURI STATUTE—AGENTS ON WHOM SERVICE MAY BE MADE.

By the statute of Missouri, foreign corporations doing business in the state are required to file their articles of incorporation, establish an office or agency, and subject themselves in certain prescribed respects to the state laws; but corporations "entirely nonresident," soliciting business through "drummers or traveling salesmen," are expressly excepted. By a further provision service is authorized to be made in an action against a corporation having no office or agency by serving an agent of the company wherever found. *Held* that, in an action for malicious prosecution against a nonresident corporation having no office or agency in the state, valid service could not be made on one who was merely a solicitor of orders for goods which were sent to the company to be filled, who received a commission on such orders, and had no other relation to the company and no relation to the matter out of which the action arose, such person not being an "agent" within the fair and reasonable meaning of the statute.

On Motion to Quash Sheriff's Return of Service.

George P. Norton, for plaintiff.
Wash Adams, for defendant.

PHILIPS, District Judge (orally). This is an action for malicious prosecution, instituted in the circuit court of Jackson county, Mo., and removed to this court. The sheriff's return, which is sought to be quashed, is:

"Executed this writ in Jackson county, Missouri, on the 31st day of July, 1903, by delivering a copy of the same, together with a copy of the petition hereto attached, to C. H. Gurley, agent for the within named defendant corporation, the Chicago Portrait Company, they having no business office in Jackson county, Missouri."

The motion to quash is accompanied by affidavits and exhibits, the purpose of which is to show that the alleged agent Gurley was not

¶ 1. Service of process on foreign corporations, see note to Eldred v. American Palace Car Co., 45 C. C. A. 3.

¶ 2. See Corporations, vol. 12, Cent. Dig. § 2316.

such agent and did not sustain such relation to the company as to authorize service of this process upon him. Our statutes provide and contemplate that where a nonresident corporation, as the defendant in this case is admitted to be, is doing business in the state, but has no actual situs, as by having an office or appointed agent under the provisions of the statute requiring nonresident corporations doing business in this state to establish an office or agency, etc., upon whom service can be had, and to make report to its principal, service may be had upon the agent of the company wherever found in the state. Now, it appears from the affidavits in this case and the contract between the defendant company and one Gurley that the portrait company is a corporation of Illinois, located at Chicago; that it appoints men to go out through certain districts, who are called "road masters," to solicit business for the enlargement of pictures and photographs and for the sale of frames; and that these solicitors, or road men, get the business and send the orders in to the company at Chicago; and I presume if the orders are accepted by the company it makes the enlargement of the picture or photograph, or the frames, as the case may be, and then sends them, consigned to the company— not to the employé or agent, but to itself—at the place where the picture or frame is to be delivered; and, while it is not exactly clear as to the process of delivery, the agent, when the article reaches its destination, calls for it, and remits the charges to the house at Chicago. Now, what was his relation to the company? He seems to get a certain commission on the work obtained for the company, and he is given a certain district in which to operate in the state of Missouri— the northwestern part, including the county of Jackson. He employs such assistants and employés as he sees fit in assisting him in this matter of drumming up and getting business for the company and sending these orders in; that is the substance of it.

The question presented is whether that is such an agent, within the purview of the statute, as would authorize service upon the nonresident corporation to entitle the plaintiff to a judgment in personam upon such service. It is a question not wholly free from embarrassment. But, after giving it such investigation as opportunity permits, I have reached the conclusion that, as applied to the particular facts of this case, this party ought not to be held to be such agent as that service could be had upon him. The question has undergone two close and scrutinizing investigations by the Supreme Court of the United States, and I shall not refer to the many cases ruled upon the circuit, because I have not the time nor is it necessary here to do so.

The case of St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222, and the case of Connecticut Mutual Life Insurance Company v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569, are the most interesting, because they present the reasons for the rule, and lay down some underlying fundamental principles which ought to guide the court in determining such cases, without being influenced or controlled so much by the particular and specially ruled cases.

Mr. Justice Field in St. Clair v. Cox, 106 U. S. 355, 1 Sup. Ct. 359, 27 L. Ed. 222, would seem to indicate that his judgment was in-

fluenced largely by the question as to whether or not the subject-matter of the litigation in the case in which the service was had upon the imputed agent in any wise pertained to his functions as the agent or employé of the company.     He said:

"All that there is in the legal residence of a corporation in the state of its creation consists in the fact that by its laws the corporators are associated together and allowed to exercise as a body certain functions, with a right of succession in its members.    Its officers and agents constitute all that is visible of its existence, and they may be authorized to act for it without as well as within the state.    There would seem, therefore, to be no sound reason why, to the extent of their agency, they should not be equally deemed to represent it in the states for which they are respectively appointed when it is called to legal responsibility for their transactions.    *   *   *   If a state permits a foreign corporation to do business within her limits, and at the same time provides that in suits against it for business there done process shall be served upon its agents, the provision is to be deemed a condition of the permission, and corporations that subsequently do business in the state are to be deemed to assent to such condition as fully as though they had specially authorized their agents to receive service of the process.   Such condition must not, however, encroach upon that principle of natural justice which requires notice of a suit to a party before he can be bound by it.   It must be reasonable, and the service provided for should be only upon such agents as may be properly deemed representatives of the foreign corporation. *   *   *   We do not, however, understand the law as authorizing the service of a copy of the writ, as a summons, upon an agent of a foreign corporation, unless the corporation be engaged in business in the state, and the agent be appointed to act there.   We so construe the words 'agent of such corporation within this state.'   They do not sanction service upon an officer or agent of the corporation who resides in another state, and is only casually in the state, and not charged with any business of the corporation there."

Further on, in discussing the case of Newell v. Railway Company, 19 Mich. 344, the court said:

"Admitting, therefore, for the purpose of this suit, that in given cases the foreign corporation would be bound by service on its treasurer in Michigan, this could only be so when the treasurer, the then official and officer then in a manner impersonating the company, should be served.   The transaction of business by the corporation in the state, general or special, appearing, a certificate of service by the proper officer on a person who is its agent there would, in our opinion, be sufficient prima facie evidence that the agent represented the company in the business.   It would then be open, when the record is offered as evidence in another state, to show that the agent stood in no representative character to the company, that his duties were limited to those of a subordinate employé or to a particular transaction, or that his agency had ceased when the matter in suit arose."

In this case it was ruled that where the officer's return simply stated that he had served the agent of the nonresident corporation, and the return did not disclose the fact that the defendant company was doing business in the state, and the record of the case did not disclose that the suit in question grew out of his transactions, the judgment was void, and subject to attack collaterally.   Under that ruling, if the defendant in this case should stand upon this return, and the petition did not even disclose the fact that the corporation was doing business in this state, or that the service was made upon an authorized agent, it would be bad.

The petition in this case shows that the cause of action is an alleged malicious prosecution instituted by the defendant corporation against

126 F.—53

the plaintiff. What had Mr. Gurley, upon whom the process in this case was served, to do with the matter or transaction in question, which in no wise pertained to his special contractual relation to the defendant company? He was under no obligation to report to the company any transaction or suit which did not touch his business domain. He had naught to do with the subject-matter of this suit. It did not grow out of his employment. In the very justice of the case, and upon principles of public policy, where the principal is sought to be bound by notice to or process upon an agent or employé, such agent or employé should sustain such relation to the matter growing out of the character of his employment as would, fide et fiducia, impose upon him the duty to report the fact to his principal or employer. This is the rule in respect of the law of agency in the matter of an effective notice to an agent to bind the principal. Story on Agency, § 140; Hayward, etc., v. Nat. Insurance Company, 52 Mo. 191, 192, 14 Am. Rep. 400.

This inheres in the rule that the assumed agent is acting in a representative capacity for the company at the time of the notice or service of process. As the nonresident corporation must be doing business in the state to authorize service on the agent or employé, it would seem reasonable that such service of process ought to be in an action in some way connected with or touching the matter which the employé represents. This would seem to be the idea not only expressed by Mr. Justice Field in St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222, but also by Mr. Justice Peckham in Mutual Life Insurance Company v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569.

A brief reference to these rulings will put before counsel who are interested in this case the thought that is in the mind of the court. In the latter case the Mutual Life Insurance Company had for 24 years been doing an insurance business in the state of Tennessee; it had at one time complied with the law of the state of Tennessee, which is not unlike the statute of this state, which required the nonresident corporation doing business in the state to establish an office and agent there upon whom process could be had, and it became subject to the domiciliary control, to the sovereignty, of the state. It had a general agent located at Louisville, Ky., who had charge of the business in the two states of Kentucky and Tennessee. After the insurance policy in question, of Spratley, had been issued, the company withdrew its agent from the state of Tennessee, and had no local established agent there. After a time it did not perhaps solicit business in Tennessee, and only looked after the old policies through the agent at Louisville occasionally sending local employés down there, as its policies theretofore issued were from time to time maturing and became the subject of adjustment and litigation. Spratley died, and the claim was sent in to the company, and thereupon the company sent Chaffee (the agent at Louisville) to Tennessee, with authority not only to investigate the loss, but to adjust it in such way as he saw fit. Upon a disagreement as to the adjustment, and pending these negotiations, while he was there the administrator brought suit against the company in the state court, and service was had upon Chaffee. Judg-

ment was rendered against the company by default.  The insurance company afterwards filed a bill in equity in the United States court of Tennessee to set aside this judgment.  It is quite apparent, to any one who will read the discussion of that question by Mr. Justice Peckham, that his ruling was controlled by the fact that under the particular circumstances of the case said general agent was invested with authority from the company, not only to look after the transaction of their business in that locality, but he was in Tennessee for the very purpose of adjusting this matter, with plenary power to compromise and settle and adjust it.  He was, for the purpose of the case, pro hac vice, the corporation itself, and the opinion is bottomed upon that proposition.  He was there in his capacity as adjusting agent of a transaction, connected with the very matter of his local supervision, and it was for that reason ruled that service on him was sufficient.  If the law were otherwise, it would be that a nonresident corporation sending a special agent into this state to transact a special, limited, matter could be sued here, in personam, respecting a cause of action entirely foreign to his special mission, by serving process on such special agent.

The representative character of the agent required by the rule to authorize process on him is illustrated by reference to the provisions of the Missouri statute (Rev. St. 1899, §§ 1024–1026), which require foreign corporations for pecuniary profit, doing business in the state, to file articles of incorporation with the Secretary of State, and be subject to local visitation, regulation, and the payment of taxes on its business; which expressly excepts from the operation of this statute "drummers or traveling salesmen, soliciting business in this state for foreign corporations which are entirely nonresident."  The terms "drummer" and "traveling salesman" have a well-known popular meaning.  They are employés of such corporations, employed to go into other states and communities to drum up and solicit business for the houses they represent.  Their functions in that respect are very aptly stated by Judge Lochren in Boardman v. McClure Company (C. C.) 123 Fed. 617, where he held that under the statute of Minnesota, which it may be conceded is somewhat more restricted than the provisions of the statute of this state, drummers and traveling salesmen coming into the state were not agents, within the meaning of that statute.  In speaking of the functions of such men he says:

"I think it would be going too far to hold that under this statute a jobbing corporation who has traveling men sent through the country to solicit orders for goods or wares can be held, under a statute like this, to be doing business wherever those solicitors go, and that it is liable to be served with process by delivering copies of the process to such traveling men going about the country.  They would not be transacting the general business of the corporations, which would be to sell goods, either goods that they were dealing in, or goods that they were manufacturing.  Many manufacturing foreign corporations are doing business here.  Many who are manufacturing farm machinery have warehouses in St. Paul and Minneapolis, and presumably places in different other states, where they keep their machinery for sale and sell it, and have their agents in charge making sales.  No doubt they are doing business in the state.  But I think that is different from a case where they merely send agents through the country to solicit orders, either from those who use the articles or from dealers in the articles.  Now, in this case service

was made upon Mr. Little, who has an office in Chicago, and from the affidavits appears to have been employed in soliciting advertisements for the magazine published by the defendant company. There is no doubt that a portion of its business is the publication of these advertisements—a large and remunerative portion of the business; as much so probably as the literary part of the same magazine. I believe it is admitted that it is still larger. The business of the corporation, so far as concerns that magazine, is to publish the magazine and to circulate it. The evidence, so far as that goes, is that it circulates it by mail to subscribers, and that to get it into the hands of the dealers it sells it to some large company in New York, who deals in all the magazines and furnishes them to the dealers. Its business is transacted in New York. It does not seem to me that it is transacting business in Minnesota simply by having solicitors for advertisements here, and that appears to have been the extent of Mr. Little's business. The testimony of those who are presumed to have knowledge on the subject, of Mr. Little himself, and of Mr. Brady, is that he had no authority to make contracts, even for advertisements, but simply to solicit orders—to procure persons to forward proposed advertisements to the company; or perhaps he took the proposed advertisements and forwarded them himself, and that from the rates which are made public in the magazine, or in instructions which he had, he could assure the persons of whom he solicited advertisements in respect to the rates and what would be charged for the advertisements if they were inserted; but he didn't make definite contracts. The name which such person assumes, even with the knowledge of his principal, will not be controlling when the real character of his employment appears."

Now, in this case, neither the evidence before the court nor the contract between the defendant and Gurley discloses the fact as to whether or not Gurley had the right to make contracts obligatory upon the company. While a certain territory was assigned to him for his operations as solicitor, such contract would be perfectly consistent with the office of a drummer or soliciting salesman. He had no interest in the goods to be sold by the company. He was simply to obtain and send in orders for the enlargement of pictures and photographs, or the sale of frames, and delivery thereof. Presumably these orders would be passed upon by the house when sent in, and when accepted the company would enlarge the same or frame them as ordered, and consign them, not to Gurley, but to itself, at the destination where the orders were taken. Gurley, either by himself or through his subemployés, would collect for the portraits and remit to the company. It is therefore difficult to distinguish between his relation to his employer and that of any other drummer or soliciting salesman sent by a nonresident corporation into another state to promote the sale of goods.

I take it that it would hardly be contended that this company was doing business within the state, within the purview of section 1026, Rev. St. Mo. 1899; so that had it failed to file its articles of incorporation with the Secretary of State, and furnish a list of its business for assessment purposes, it could not enforce the collection of any claim for pictures and frames shipped by it and delivered to parties thus ordering them. The statute providing for service of process on agents of nonresident corporations and section 1026 should be construed together, as they illustrate what was in the mind of the Legislature in speaking of the agent or employé of a nonresident corporation doing business in the state. And, inasmuch as the statute expressly exempts from its operation drummers and solicitors in the

state, I do not think it ought to be held that Gurley, who had no office in the state, who was traveling over different counties in the state, soliciting business in this county, and sending in his orders simply because he is found anywhere in the state, service could be had upon him in a suit respecting a matter in no wise connected with his employment. He was under no obligation to send in such notice to his principal. I think that when we get down to the underlying principle upon which the state statute is founded there is not much difficulty in this case.

The motion to quash will therefore be sustained.