## Mazzoleni v. Transamerica Corporation, Appellant, et al.

Argued September 28, 1933.   Before FRAZER, C. J.,
SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN,
JJ.

*William H. Eckert,* with him *William J. Kyle, Jr.,* and
*Smith, Buchanan, Scott & Gordon,* for appellant.

*M. Stancati,* for appellee.

Opinion by Mr. Justice Linn, November 27, 1933:

Plaintiff brought suit against two foreign corporations for damages resulting from alleged fraudulent misrepresentation made between February and July, 1930. The appellant-defendant Transamerica Corporation, appearing specially, obtained a rule to set aside the service of process: Act of March 5, 1925, P. L. 23. After hearing on petition, answer and depositions, the court discharged the rule. Was the service valid?

Appellant is a Delaware corporation. The other defendant, Intercoast Trading Company, was a Nevada corporation. Both maintained offices at 44 Wall Street, New York. Appellant is said to be a holding company, managing banking and investment institutions throughout the country. November 29, 1929, it registered with the Pennsylvania Securities Commission as a dealer under the Securities Act of April 13, 1927, P. L. 273; that registration continued until December 31, 1930.[1] Ap-

---

[1] Section 6 of the act provides: "Every company organized under the laws of any other state, or having its principal office therein, and every nonresident individual, shall file with its or his application a written consent, irrevocable, that actions may be commenced against it or him, in the proper court of any county of this Commonwealth in which the cause of action may arise, or in which the plaintiff may reside, by a service of process upon the commission as its or his agent, and stipulating and agreeing that such service of process shall be taken and held in all courts to be as valid and binding as if due service had been made upon the person or company itself according to the laws of this or any other state and such instrument shall be authenticated by the seal of such corporation, or by the signature of all the members of such copartnership, or by the signature of the president and secretary of the association, if it is a corporation or association, and shall be accompanied by a duly certified copy of the resolutions of the board of directors, trustees or managers of the corporation authorizing the said secretary and president to execute the same.

Section 2 (c) defines dealer as follows: "The term 'dealer' shall include every person or entity, other than a salesman who engages in this State, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery, or solicit-

pellant did not register pursuant to the Foreign Corporation Act of June 8, 1911, P. L. 710, section 2 of which required that it designate the secretary of the Commonwealth as its agent.

The Intercoast Trading Company, until about August 1, 1930, when it was dissolved, and, thereafter, the Intercoast Sales Corporation, maintained two places of business in Pennsylvania, one of them in Pittsburgh, where the plaintiff was employed as salesman. The Intercoast Trading Company registered under the Foreign Corporation Act of June 8, 1911, supra, but not under the Securities Act.

This suit was brought November 1, 1932. The sheriff returned that he had caused service on the appellant to be made by the sheriff of Dauphin County, who delivered to the Securities Commission at its office in Harrisburg, by handing to Samuel J. Purcell, its secretary, copies, in duplicate, of the summons and of plaintiff's statement of claim on November 2, 1932.

---

ing subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or inquiries about, or dealing in, any manner in any security or securities within this State, *including securities issued by such entity.*" (Italics ours.)

Section 2 (d) defines salesman as follows: "The term 'salesman' shall, except as provided in section four [not material now], include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or dispose of inquiries about, or deal in any manner in, securities within this State, whether by direct act or through subagents."

Section 10 provides for the registration of salesmen "upon written application by a registered dealer, and......the commission shall register, as agents or salesmen of such dealers, such persons as the dealer may request...... The commission shall issue to each person so registered a registration certificate, stating his name and residence, the address of the dealer, and the fact that he is registered for the current calendar year as an agent or salesman, as the case may be, of the dealer."

Section 5 requires that the application to register as dealer must state the principal place of business of applicant wherever situated.

The appellant contends that this service is invalid on the ground that the statute (while providing for such service in section 6) does not also contain a provision expressly requiring the commission to forward notice of the service to the registered corporation; that the omission of such provision is denial of due process. The contention must be rejected for two reasons: (1) appellant filed with the Securities Commission written assent that actions might be brought against it in certain circumstances, present in this case, and process be served on the Securities Commission as its agent; (2) the duty to send notice to the registered corporation is necessarily implied in the provisions of the statute.

(1) Pursuant to section 6 appellant agreed in writing that "actions may be commenced against it......in the proper court of any county of this Commonwealth in which the cause of action may arise or in which the plaintiff may reside," and that process, served as in this case, "shall be taken and held in all courts to be as valid and binding as if due service had been made upon the ......company itself." This suit is within the terms of that consent; it is brought in the county where the cause of action arose and process was served as authorized. The appellant cannot complain, since it consented to that provision, that the statute did not provide for forwarding notice of such service (a subject to be dealt with later); it is bound by its consent: Penna. Fire Ins. Co. v. Gold Issue Mining, etc., Co., 243 U. S. 93; Restatement, Conflict of Laws (Proposed Final Draft No. 1), sections 96, 97. While jurisdiction may not be exercised "unless a method of notification is employed which is reasonably calculated to give......knowledge of the attempted exercise of jurisdiction and an opportunity to be heard" (Restatement, Conflict of Laws (proposed final draft No. 1), section 80), as appellant expressly agreed to respond to service on the securities commission—had actual knowledge this method would be employed—the provision was reasonably adapted to give

notice. This was recognized in Wuchter v. Pizzutti, 276 U. S. 13, 21, where it is said a corporation's "knowledge of the statutory requirements may perhaps prompt frequent inquiry as to suits against them, of their appointed agent or at the office of the public official to be served." And it has been held in such circumstances that no requirement for forwarding notice is necessary: Washington v. Superior Ct., 289 U. S. 361. This is not a case of implying consent to service from doing business in the State (see Southern Ry. Co. v. Simon, 184 Fed. 959, 961), nor is it governed by the cases considering substituted service on automobile drivers (Hess v. Pawloski, 274 U. S. 352; Kane v. New Jersey, 242 U. S. 160; Wuchter v. Pizzutti, supra), because the State has greater power in regulating the admission of foreign corporations (Paul v. Virginia, 75 U. S. (8 Wall.) 168; Restatement, Conflict of Laws (Proposed Final Draft No. 1), sections 180, 181). To the objection that the statute imposes on appellant the duty of inquiring of the securities commission, the answer is that the State could have imposed the more onerous requirement of maintaining an agent to accept process: St. Clair v. Cox, 106 U. S. 350, 356. Moreover, the Foreign Corporation Act of June 18, 1911, supra (with which appellant did not comply), requires the appointment of the secretary of the Commonwealth, and, in section 3, provides that the secretary of the Commonwealth "shall immediately send by mail, postage prepaid, one copy of such process directed to the corporation at the post-office address designated by it as hereinbefore provided." Instead of availing itself of privileges under that statute, appellant considered its express contract sufficient for its purposes.

(2) In our view of the statute, however, the duty of the commission to send notice of process to the registered corporation is necessarily implied. In a number of sections, the act deals with circumstances in which it should be desirable that the commission come in contact with the dealer, e. g., sections 14, 15, 16, 17. We think sec-

tion 6 is in the same class. Section 18 provides "Any notice required by this act shall be sufficient if sent by registered mail addressed to the dealer, agent or salesman as the case may be, at the address designated in the application for registration......" Accordingly, we presume that the commission had established procedure requiring its secretary to send, by registered mail to a dealer, process served pursuant to section 6, because such duty was imposed on it as the agent of the registered corporation.

Appellant contends that it has never done business in the State and that its written consent is, therefore, inoperative. We think appellant was doing business in this State, both under the general understanding of that term and within the meaning of this statute, i. e., dealing in securities. Its certificate of registry as a dealer, granted pursuant to its application for leave to do business, was posted on the wall of the place of business in Pittsburgh as required by section 13. On the office door were the words: "Intercoast Trading Company, fiscal agent of Transamerica Corporation," the former name in letters of one inch and the name of the Transamerica Corporation in three-inch letters: Cf. St. Louis Southwestern Ry. v. Alexander, 227 U. S. 218, 228. The Intercoast Trading Company, which had not complied with the securities act (it withdrew its application for a license the day a license was issued to the Transamerica Corporation[2]) and therefore could not lawfully engage in the sale of securities, nevertheless purported to employ salesmen (who could not have lawfully acted for it: Act of 1927, sections 3 and 10), among them, the plaintiff, for the purpose of selling shares of stock in the appellant corporation. The business of both corporations was managed by various persons who held offices in both.

---

[2] In 1931, after the license of the Transamerica Corporation expired, the Intercoast Sales Corporation, which continued the operations of the Intercoast Trading Company, registered with the Securities Commission.

Appellant owned 30% of the capital stock of the Intercoast Trading Company. There is testimony by one of its officers that, although the Intercoast Trading Company was also a holding company, "the only activity it ever engaged in in the State of Pennsylvania was to sell stock of Transamerica Corporation." The appellant obtained and furnished to plaintiff, and other salesmen, certificates (as authorized by section 10), issued by the securities commission, certifying that the named employee was registered under the statute "as an agent or salesman of Transamerica Corporation, San Francisco, California, a duly registered dealer in securities." The salesmen, authorized to act pursuant to appellant's applications, solicited orders for shares of stock in the appellant corporation. The record contains copies of checks showing that payment for such stock was made to Intercoast Trading Company and, later, to Intercoast Sales Corporation, which were stamped "for deposit and the account of Bankitaly Co. of America, Americommercial Corp., Transamerica Corp., Commercial Holding Co., Intercoast Trading Co."[3] In two instances that appear, receipts delivered for payment of stock were stamped "paid" by a Transamerica Corporation stamp.

The case does not require the consideration of the general scope of the meaning of the common phrase "doing business." Appellant was engaged as a dealer as defined in the statute; that is, it was selling securities in this State pursuant to an application made to the securities commission. The Act of 1927, supra, differs in important particulars from the prior Securities Act of June 14, 1923, considered in Com. v. Pastor, 289 Pa. 22; by the Act of 1927, a registered corporation is a dealer even though it sell only its own stock: section 2 (c), supra.

---

[3] Not all of the checks were stamped for the deposit of these same companies; the stamps varied, but on all of them the name of the Transamerica Corporation appears. Intercoast Sales Corporation appears on the later stamps.

Finally, there is a contention that the irrevocable[4] consent (section 6) ceased to be effective "after [appellant's] registration has expired and it has ceased to do buiness in this State." The suit was brought in 1932, apparently within the period of limitation of actions, though after the term of registration had expired. This is directly within the terms of appellant's agreement: Penna. Fire Ins. Co. v. Gold Issue, etc., Co., supra. Suit may be brought after a foreign corporation has withdrawn from the State on a cause of action arising in the State: Washington v. Superior Ct., supra. The consent is irrevocable as to causes of action arising during the period in which appellant exercised its license as dealer.

Judgment affirmed.

---

[4] Apparently a common provision in such statutes; see so-called Blue Sky Law cases, reported in 242 U. S. 539, and following pages. See, Restatement, Conflict of Laws (Proposed Final Draft No. 1), section 97, comment c.