## KING TONOPAH MINING CO. v. LYNCH et al.

(District Court, D. Nevada.   March 21, 1916.)

No. A-10.

**1. CORPORATIONS ☞636—FOREIGN CORPORATIONS—POWER TO EXCLUDE.**

The Legislature of a state has a right to exclude foreign corporations, provided the corporation is so organized that it has no authority to do anything but a purely intrastate business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2505–2509, 2571; Dec. Dig. ☞636.]

**2. CORPORATIONS ☞651—FOREIGN CORPORATIONS—POWER TO REGULATE.**

A state Legislature may prescribe the conditions on which a corporation may remain in and do business within the state, and for a violation of such conditions the privilege of doing business in the state may be revoked; but the corporation cannot, as punishment, be deprived of or compelled to waive a right guaranteed by the federal Constitution.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2574, 2575; Dec. Dig. ☞651.]

**3. CORPORATIONS ☞668(15)—EVIDENCE ☞65—FOREIGN CORPORATIONS— SERVICE OF PROCESS—CONSENT OF CORPORATION.**

A constructive agreement by a corporation doing business in a state to submit to a void or illegal statute prescribing a mode of serving process, which denies due process of law, cannot be founded on anything less than actual knowledge of the statute, as the presumption that every man knows the law does not hold him to a knowledge of statutes which for any reason are illegal or void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2626; Dec. Dig. ☞668(15); Evidence, Cent. Dig. § 85; Dec. Dig. ☞65.]

**4. CONSTITUTIONAL LAW ☞309(2)—DUE PROCESS OF LAW—STATUTORY PROVISIONS.**

A method of service of process, though prescribed by state statute, is not sufficient, if it does not amount to due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 929, 930; Dec. Dig. ☞309(2).]

**5. CONSTITUTIONAL LAW ☞251—DUE PROCESS OF LAW—STATUTORY PROVISIONS.**

A state may not, by prescribing what shall constitute due process of law, subtract anything from the right recognized and established as due process in the federal Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 726, 727, 732; Dec. Dig. ☞251.]

**6. CORPORATIONS ☞675—FOREIGN CORPORATION—CONSTRUCTIVE SERVICE— JUDGMENT.**

Where, in an action against a nonresident foreign corporation, a writ of attachment was issued and levied when the action was commenced, the property so sequestered limited the extent to which a judgment obtained by constructive service could be enforced.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2653; Dec. Dig. ☞675.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. CORPORATIONS ☞670(4)—FOREIGN CORPORATIONS—CONSTRUCTIVE SERVICE —ATTACHMENT.**

Where the property attached in an action against a nonresident foreign corporation was a patented mining claim, which was not being worked and had not been worked or occupied for years, and on which annual labor was neither performed nor required, and the only visible evidence of the seizure was notice to that effect posted on the claim, such seizure did not obviate the necessity of notice to the owner, and a valid judgment, which might be enforced against the mining claims, could not be obtained unless the company was served as prescribed by law and the service must have amounted to due process.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2631, 2632; Dec. Dig. ☞670(4).]

**8. JUDGMENT ☞17(1)—PROCESS—NECESSITY OF PERSONAL SERVICE.**

As a general rule a valid judgment in personam cannot be rendered against a defendant, except after his voluntary appearance or the personal service of process within the territorial jurisdiction of the court.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 25; Dec. Dig. ☞17(1).]

**9. PROCESS ☞85—CONSTRUCTIVE SERVICE—VALIDITY OF SERVICE.**

While a state has no power over a nonresident and absent owner, it has complete jurisdiction over his property within its borders, subject to the constitutional restriction that property cannot be taken from its owner except after due process of law, and hence may provide for constructive service by means of which judgment may be obtained and satisfied out of the property in the state belonging to an absent defendant.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 99; Dec. Dig. ☞85.]

**10. CONSTITUTIONAL LAW ☞309(3)—DUE PROCESS—SERVICE OF PROCESS—FOREIGN CORPORATIONS.**

Rev. Laws Nev. § 5024, requires foreign corporations owning property or doing business in the state to appoint and keep in the state an agent upon whom process may be served. Section 5025 provides that if any such company shall fail to appoint such agent, on the production of a certificate of the secretary of state showing the fact, which certificate shall be conclusive evidence of the fact, it shall be lawful to serve such company with any legal process by delivering a copy to the secretary of state, or, in his absence, to a deputy secretary of state. *Held*, that service thereunder on the secretary of state did not amount to due process of law, where neither plaintiff nor the secretary of state made any effort or attempt to notify the company, and it acquired no knowledge of the suit prior to judgment, or within the six months thereafter, within which it might have answered to the merits, though plaintiff knew the defendant was a Utah corporation, had brought a prior action against it, and two days before instituting the action in question made an affidavit in which he swore that he was familiar with its business and affairs.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 929, 930; Dec. Dig. ☞309(3).]

**11. CONSTITUTIONAL LAW ☞251—"DUE PROCESS OF LAW"—ELEMENTS.**

The fundamental requisites of "due process of law" are notice and an opportunity to be heard.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 726, 727, 732; Dec. Dig. ☞251.

For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

**12. CORPORATIONS ⊙⟶507(1)—FOREIGN CORPORATIONS—SERVICE OF PROCESS—DUE PROCESS OF LAW.**

The method of service of process on corporations, prescribed by statute, must be one that with reasonable certainty will result in actual notice to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1971, 1972, 1974, 1976–1978, 1995; Dec. Dig. ⊙⟶507(1).]

**13. PROCESS ⊙⟶80—SERVICE ON AGENT OF DEFENDANT.**

Service of process on an agent otherwise competent, whose relations to plaintiff or to the claim are such as to make it to his interest to suppress the fact of service, is insufficient.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 92; Dec. Dig. ⊙⟶80.]

In Equity. Suit by the King Tonopah Mining Company against T. J. Lynch and others for relief against a default judgment, under which property was sold at sheriff's sale. Case reopened.

Sweeney & Morehouse, of Reno, Nev., for plaintiff.
H. R. Cooke, of Tonopah, Nev., for defendants.

FARRINGTON, District Judge. May 8, 1912, in the district court for Nye county, T. J. Lynch commenced an action against the King Tonopah Mining Company, a Utah corporation, to recover the sum of $7,521.22, with interest at the rate of 7 per cent. per annum from May 1, 1907, alleged to be due on a stated account. The summons was issued by H. R. Cooke, attorney for Lynch, and served by the sheriff of Ormsby county. The return of the officer, in so far as it is material, is as follows:

"Ed. Regan, sheriff of Ormsby county, being first duly sworn, says: On May 9, 1912, affiant received the hereunto annexed summons, and on the 11th day of May, 1912, affiant instructed the secretary of state to make search of his records and to officially certify whether or not the King Tonopah Mining Company * * * had filed or caused to be filed in the office of the secretary of state of Nevada a designation of agent upon whom process against said company might be served; that said secretary of state, after making such search, was unable to find such designation, and thereupon officially certified that said corporation had no process agent designated for the state of Nevada; * * * that thereupon affiant personally delivered to the secretary of state of Nevada a full, true, and correct copy of the annexed summons, and that a certified copy of the complaint in said action was attached to said copy of summons and served at the same time and place."

The certificate referred to did not show that the mining company had failed to appoint an agent; it merely declared:

"There is no record in this office of the King Tonopah Mining Company ever having filed copy of their articles of incorporation in this office, either as a domestic or foreign corporation, and that they have not filed list of officers or the appointment of a resident agent upon whom process can be served."

George W. Cowing, deputy secretary of state, testified that he merely received the papers and filed them, without giving notice to any one. The service was made in pursuance of sections 5024 and 5025 of the Revised Laws of Nevada, which are as follows:

"5024. Every incorporated company or association created and existing under the laws of any other state, or territory, or foreign government, or the

government of the United States, *owning property or doing business in this state*, shall appoint and keep in this state an agent, upon whom all legal process may be served for such corporation or association. Such corporation shall file a certificate properly authenticated by the proper officers of such company, with the secretary of state, specifying the full name and residence of such agent, which certificate shall be renewed by such company as often as a change may be made in such appointment, or vacancy shall occur in such agency.

"5025. If any such company shall fail to appoint such agent, or fail to file such certificate for fifteen days after a vacancy occurs in such agency, on the production of a certificate of the secretary of state showing either fact, which certificate shall be conclusive evidence of the fact so certified to and be made a part of the return of service, it shall be lawful to serve such company with any and all legal process, by delivering a copy to the secretary of state, or, in his absence, to any duly appointed and acting deputy secretary of state, and such service shall be valid to all intents and purposes: Provided, that in all cases of such service the defendant shall have forty days (exclusive of the day of service) within which to answer or plead. This section shall be construed as giving an additional mode and manner of serving process and as not affecting the validity of any other valid service."

It appears from the complaint and oral testimony that the King Tonopah Mining Company since 1907 had been doing no business in the state of Nevada, except such as was involved in owning, either equitably or legally, in Tonopah mining district, five patented mining claims, and in paying the taxes thereon, and that at the time of the service it had no managing or business agent, cashier, secretary, agent, or officers in the state, except the secretary of state and his deputy, whose agency and authority, if any they had, was derived solely from the statute. Default of the company was entered in the state court, followed by a judgment in favor of plaintiff.

The five mining claims mentioned above had been attached on May 9, 1912. No question is raised as to the technical regularity of the attachment, or of the subsequent sheriff's sale on July 22, 1912. Six months later the sheriff executed a deed for all the claims to H. R. Cooke, C. H. McIntosh, and the Tonopah Banking Corporation. The testimony shows, and I so find, that the King Tonopah Mining Company had no knowledge of the action, or of the subsequent sale, until after January 30, 1913.

May 7, 1913, the King Tonopah Mining Company filed with the secretary of state of Nevada a certified copy of its articles of incorporation, and a certificate in which it named its officers, and designated an agent upon whom service of process could be had in Nevada. On the same day the present action was commenced in this court. It does not appear that the company had prior to 1913 filed any papers in the office of the secretary of state. It was organized November 20, 1902, and acquired the property sold under the above-mentioned execution, in December, 1911, by deed from the O'Meara-Lynch Company, also a Utah corporation.

Some time prior to May, 1912, an action was brought on the same cause by T. J. Lynch against the King Tonopah Mining Company and the O'Meara-Lynch Company. That action, having been removed from the district court of Nye county to this court, was dismissed May 6, 1912. Two days later the action was recommenced in the dis-

trict court of Nye county; the King Tonopah Mining Company being the only defendant. This was all done with no publicity other than that contained in the court records and in the office of the secretary of state. By reason of this complainant alleges that it was lulled into repose, and deceived and misled; that it never knew of said suit until after the time to move to set aside the default judgment and sale had expired. The prayer of the complaint is that it be adjudged that the district court of Nye county had no jurisdiction over the King Tonopah Mining Company in the case filed against it May 8, 1912; that no legal service of summons was ever had; that said company be adjudged to be the owner and entitled to the possession of said mining claims, and that said defendants be enjoined from asserting any title thereto.

The King Tonopah Mining Company contends that it had a good defense on the merits to the action brought in the state court; that the service of summons and complaint was insufficient, and consequently it has been deprived of its property without due process of law. Lynch insists that the service was valid, and that the King Tonopah Mining Company, by entering into the state of Nevada, doing business, and acquiring property therein, accepted the statutory conditions in regard to service of process, and is now estopped from questioning the validity of the statute or the sufficiency of the service. The position is thus stated in defendants' brief:

"Even though state statute relative to conditions imposed upon foreign corporations were unconstitutional, yet it was a matter that could be waived by the corporation, and the corporation did waive it when it entered the state, and would thereafter be estopped from questioning the constitutionality of the statute."

At the outset it is proper to say that I am not called upon to determine whether the service of process in the present case would have been sufficient if the secretary of state had notified the King Tonopah Mining Company, or if in any other manner the company had acquired knowledge of the action, either prior to judgment or thereafter within the six months allowed to answer to the merits, as provided in section 5084 of the Revised Laws of Nevada. The company had no knowledge or notice of the action prior to the time when all relief in the original case by motion, new trial, or other proceeding was barred.

It will also be noted that a delivery of a copy of legal process to the secretary of state is the extent of the statutory requirement for valid service of a foreign corporation, when made on that official. Notice of such service by the secretary of state to the foreign corporation is neither required nor prohibited.

[1, 2] The right of the Legislature to exclude a foreign corporation cannot be questioned, provided the corporation is so organized that it has no authority to do anything but a purely intrastate business. The Legislature may also prescribe the conditions on which a corporation may remain in and do business within the state, and for a violation of such conditions the privilege of doing business in the state may be revoked. Clearly, however, the corporation cannot, as punishment, be deprived of, or compelled to waive, a right guaranteed by the federal

Constitution. To hold otherwise is to hold that the Constitution of the United States may be nullified or abridged by state action.

This principle is illustrated in those cases where it has been held that contemptuous conduct or disobedience on the part of a defendant cannot be punished by striking his answer from the files. If punished, it must be in some other mode than by taking away his constitutional right to be heard before being deprived of his property. Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215; Foley v. Foley, 120 Cal. 33, 52 Pac. 122, 65 Am. St. Rep. 147; Harley v. Montana, etc., Co., 27 Mont. 388, 71 Pac. 407; Summerville v. Kelliher, 144 Cal. 155, 77 Pac. 889, 891. In the last case a California statute authorizing the court to strike the answer of a party for refusal to attend when required, and give his deposition, was pronounced unconstitutional.

The power of the state to revoke the license of a foreign insurance company, which had violated a statute prohibiting removal of causes to a federal court, was upheld in Doyle v. Continental Insurance Co., 94 U. S. 535, 24 L. Ed. 148; and also in Security Mutual Life Insurance Co. v. Prewitt, 202 U. S. 246, 26 Sup. Ct. 619, 50 L. Ed. 1013, 6 Ann. Cas. 317. But these decisions rest, not on any alleged illegality of the attempt to remove, but on the authority of the state to regulate its purely domestic affairs without direct interference from the general government. Hence the state had power to recall the license, even though its motives for so doing were unlawful. Recently, however, the Supreme Court has held that, where a foreign corporation is doing both interstate and intrastate business, a state may not revoke a license to do intrastate business, because the corporation removes, or attempts to remove, a case from the state to the federal courts. Harrison v. St. Louis & S. F. R. Co., 232 U. S. 318, 34 Sup. Ct. 333, 58 L. Ed. 621, L. R. A. 1915F, 1187.

State statutes which forbid exercise of the right of removal by a foreign corporation, or which, as a condition precedent to transacting business in the state, require such a corporation to agree in advance that it will not remove any case to the federal court, are repugnant to the Constitution of the United States, and void, and the agreement made in conformity to such a statute is contrary to public policy; it derives no support from the statute, and is void also. Southern Pacific Co. v. Denton, 146 U. S. 202, 207, 13 Sup. Ct. 44, 36 L. Ed. 942; Home Ins. Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365; Herndon v. Chicago, etc., R. Co., 218 U. S. 135, 30 Sup. Ct. 633, 54 L. Ed. 970. In the Morse Case, supra, a New York insurance company had been sued in the state court of Wisconsin; the court, believing that such a statute and agreement against removal of causes justified the dismissal of the company's petition to remove, proceeded to trial, and rendered a judgment for plaintiff. The judgment was affirmed by the Supreme Court of Wisconsin. It was held that by doing business in the state the company had accepted the statute and waived its right of removal; but on writ of error the Supreme Court of the United States pronounced all proceedings had in the state courts subsequent to petition for removal illegal, reversed the judgment, and ordered that the prayer of the petition be granted. The right to exclude the corpora-

tion was recognized, but no right to prevent the removal of a cause was conceded.

In that case Wisconsin said to the Home Insurance Company: Give up all right of removal, or you cannot do business within this state. In the present case the state of Nevada said to the King Tonopah Mining Company: Appoint a state agent, or submit to service of process on the secretary of state, with no duty on his part to give you notice when action is brought against you in our courts. The alternative in the first case may be legally enforced, because the state may exclude a foreign corporation, with or without reason; but in the second case the alternative must be enforced, if at all, in the face of the constitutional provision prohibiting the state from depriving any person of property without due process of law.

It is true, there are constitutional rights which may be waived; that is, one may voluntarily refrain from claiming or exercising them. But it does not follow from this that a state may by statute exact from a corporation a valid, express agreement to abandon any such right. Nor does the circumstance that such a corporation acquires or holds property in the state, or does business therein at a time when the statutes of the state prohibit the exercise of a constitutional right, warrant the presumption that the corporation has agreed to waive that right. Pope Mfg. Co. v. Gormully, 144 U. S. 224, 234, 12 Sup. Ct. 632, 36 L. Ed. 414; Blake v. McClung, 172 U. S. 239, 255, 19 Sup. Ct. 165, 43 L. Ed. 432. In Insurance Co. v. Morse, 20 Wall. 445, 451, 22 L. Ed. 365, Justice Hunt says:

> "Every citizen is entitled to resort to all the courts of the country, and to invoke the protection which all the laws or all those courts may afford him. A man may not barter away his life or his freedom, or his substantial rights. In a criminal case, he cannot, as was held in Cancemi's Case [18 N. Y. 128], be tried in any other manner than by a jury of 12 men, although he consent in open court to be tried by a jury of 11 men. In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge. So he may omit to exercise his right to remove his suit to a federal tribunal, as often as he thinks fit, in each recurring case. In these aspects any citizen may no doubt waive the rights to which he may be entitled. He cannot, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions whenever the case may be presented."

[3] Under the Constitution, the company in this case is entitled to due process; and if the service in question, in and of itself, does not constitute such process, then its binding force, if any it has, rests on an assumed consent of the company, or on the power of the state to limit and abridge the constitutional guaranty of due process. Consent can be predicated only on the presumption that, when it entered the state, the company knew and accepted the laws of the state, and by failing to appoint a resident agent indicated its willingness to be served in the manner prescribed by statute. The presumption that every man knows the law does not hold him to a knowledge of statutes which for any reason are illegal or void; and a constructive agreement to submit to a void or an illegal statute certainly cannot be founded on anything less than actual knowledge of the statute itself. No such

knowledge is shown in the instant case. The same argument has been pressed, without avail, on the Supreme Court of the United States in support of the contention that a corporation, entering a state not of its origin, is presumed to know and consent to statutes prohibiting it from exercising the right of removal.

[4] To admit that a method of service, whether it amounts to due process of law or not, is sufficient because it is prescribed by state statute, is to admit that a state may impair rights guaranteed by the national Constitution. The prohibitions of the Constitution cannot thus be evaded. Fayerweather v. Ritch, 195 U. S. 276, 25 Sup. Ct. 58, 49 L. Ed. 193; 5 Ency. U. S. Sup. Ct. Rep. 627. In Chicago, B., etc., R. R. v. Chicago, 166 U. S. 226, 234, 17 Sup. Ct. 581, 584 [41 L. Ed. 979] it was said:

"A state may not, by any of its agencies, disregard the prohibitions of the Fourteenth Amendment. Its judicial authorities may keep within the letter of the statute prescribing forms of procedure in the courts, and give the parties interested the fullest opportunity to be heard, and yet it might be that its final action would be inconsistent with that amendment. In determining what is due process of law, regard must be had to substance, not to form. This court, referring to the Fourteenth Amendment, has said: 'Can a state make anything due process of law which, by its own legislation, it chooses to declare such? To affirm this is to hold that the prohibition to the states is of no avail, or has no application where the invasion of private rights is effected under the forms of state legislation.'"

[5] It is unnecessary to produce authorities to the effect that a foreign corporation, as a penalty for failing to file a list of its officers with the secretary of state, or to designate an agent upon whom service of process may be had, can be deprived of its property without due process of law. As well might it be said that a state may punish murder by depriving a murderer of the right of trial by jury. It necessarily follows from this that a state may not, by prescribing what shall constitute due process of law, subtract anything from the right which is recognized and established as due process in the federal Constitution. Grannis v. Ordean, 234 U. S. 385, 34 Sup. Ct. 779, 58 L. Ed. 1363.

[6] When the present action was commenced in the state court, a writ of attachment was issued and levied on five patented mining claims in Nye county. Thus aided, the action may be regarded as a proceeding quasi in rem. The property so sequestered limits the extent to which a judgment obtained by constructive service against a foreign corporation can be enforced. Jones on Jurisdiction, §§ 56, 57.

[7] It is a theory of the law, usually true in fact, that all property is in the possession of its owner, and that its seizure will operate to impart notice to him. But where the property seized is a patented mining claim, which is not being worked, and has not been worked or occupied for years, on which annual labor is neither performed nor required, whose owner is a nonresident, and where the only visible evidence of seizure is notice to that effect posted on the claim, the seizure is not likely to impart knowledge; and, as the likelihood of notice diminishes, the reason for the rule also diminishes. In any event, such a seizure does not obviate the necessity of notice to the owner. Notifi-

cation is still indispensable. Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914.

The attachment in no wise relaxes the rule that in order to obtain a valid judgment, which may be enforced against the mining claims, the company must have been served as prescribed by law, and the service must have amounted to due process. An argument to the contrary was advanced, but without avail, in Lonkey v. Keyes S. M. Co., 21 Nev. 312, 320, 31 Pac. 57, 17 L. R. A. 351.

[8, 9] Notice is jurisdictional, and it may be stated as a general rule that a valid judgment in personam cannot be rendered against a defendant, except after his voluntary appearance, or personal service of process made within the territorial jurisdiction of the court. If no valid or effective judgment could be rendered in any case, except after such appearance or *personal service,* enforcement of just rights in many cases would be difficult, if not impossible. Hence the statutes providing constructive service, by means of which judgment may be obtained in a state from which the defendant absents himself, and satisfied out of and to the extent of his property therein. While the state has no power over the nonresident and absent owner, it does have complete jurisdiction over his property within its borders, subject to the constitutional restriction that property cannot be taken from its owner, except after due process of law. Roller v. Holly, 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520.

[10] The method of service employed in this case presents a striking contrast to other modes of constructive service provided by the Nevada statutes. Service by publication can be had only by order of the court, after proof to its satisfaction that "the person who is to be served resides out of the state, or has departed from the state, or cannot after due diligence be found within the state, or conceals himself to avoid the service of summons, and that a good cause of action exists against him." The order must "direct the *publication to be made in a newspaper,* designated by the court or a judge thereof, as one most likely to give notice to the person to be served, for a period of six weeks, at least once a week during said time." In addition to this, when the residence of the absent defendant is known, *copy of the complaint and summons must be mailed to him at his place of residence.* After publication has been ordered, personal service of a copy of the summons and complaint is equivalent to a completed service by publication and deposit in the post office. Revised Laws of Nevada, §§ 5026, 5027.

Section 1273 provides that, if an attorney of any insurance company appointed to accept service in any of the courts of this state "shall remove from the state, or become disqualified in any manner from accepting service, * * * valid service may be made on such company by service upon the controller," who *"shall immediately notify such company and the principal agent for the Pacific Coast, inclosing a copy of the service by mail, postpaid."* Sections 5028, 5029, and 5030 disclose similar, if not greater, precaution in providing an effective service on unknown heirs and parties interested in the subject of a complaint.

Sections 5024 and 5025, which are here in question, provide that on the production of a certificate of the secretary of state, showing that a foreign corporation owning property or doing business in the state has failed to appoint an agent on whom legal service may be made, service of all legal process may be made by delivering a copy to the secretary of state, or, in his absence, to his deputy. The secretary of state is not required to give any notice to the defendant, and the courts have held that it is not his duty to do so.

The method of service by publication, and the method of service provided for foreign insurance companies in certain cases, and for absent and minor heirs, are admirably calculated to give notice to interested parties. They provide for publication, and for mailing of the process. The method employed in the present case, however, provides for neither; it does not even require the secretary of state to make any effort to notify the defendant. If mere delivery of a copy of the summons and complaint to the secretary of state is sufficient to constitute due process in one case, why is mailing of process and publication of summons necessary in other cases?

If the defendant consented to this method of service, we must assume it also consented to a service which was not reasonably calculated to afford any notice whatever. If such service is valid, and constitutes due process of law, why would not a similar service on the clerk of the court in which an action is commenced be equally valid, if authorized by statute? Or why might not the mere filing of the complaint with the clerk constitute legal and sufficient service and due process of law, if so declared by statute? The one service would be quite as efficacious, quite as likely to be made known to the defendant, as either of the others.

The office of the secretary of state is never a popular resort, and, even if it were, there is no provision for posting notice of service. The commencement of an action, in the absence of personal service, service by publication, or by mail, could not be regarded, in and of itself, as notice sufficient to satisfy the constitutional conception of due process, even though it might be so declared by statute. Such service on the secretary of state is attended by no more publicity than the lodging of a complaint with the clerk of the court, except that the serving officer and the secretary of state are made aware of the fact. It would be difficult to conceive a method of constructive service better calculated not to accomplish the object for which service of summons is designed.

The only reasonable conclusion to be drawn from a comparison of the statutes regulating constructive service in Nevada is that the statutory method provided in sections 5024 and 5025, so meager in possibility of notice to a defendant corporation, is imposed by way of punishment. But, as we have seen, neither violation of a statute, nor prior constructive consent thereto, will validate state action by which the constitutional guaranty of due process may be curtailed or impaired.

[11] We have no precise definition for due process of law. Its fundamental requisites, however, are notice and the opportunity to be

heard. Hovey v. Elliott, 167 U. S. 409, 418, 17 Sup. Ct. 841, 42 L. Ed. 215; Louisville & Nashville R. Co. v. Schmidt, 177 U. S. 230, 236, 20 Sup. Ct. 620, 44 L. Ed. 747; Simons v. Craft, 182 U. S. 427, 437, 21 Sup. Ct. 836, 45 L. Ed. 1165; Twining v. New Jersey, 211 U. S. 78, 110, 29 Sup. Ct. 14, 53 L. Ed. 97.

"By due process is meant one which, following the forms of law, is appropriate to the case and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained, and, wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought." Hagar v. Reclamation District, 111 U. S. 701, 708, 4 Sup. Ct. 663, 667 [28 L. Ed. 569].

[12] The method of service on corporations prescribed by statute must be one that with reasonable certainty will result in actual notice to the corporation. 3 Thompson on Corp. § 3050.

"It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and never can be upheld where justice is justly administered." Galpin v. Page, 18 Wall. 350, 368, 21 L. Ed. 959.

In St. Clair v. Cox, 106 U. S. 350, 356, 1 Sup. Ct. 354, 360 [27 L. Ed. 222], Mr. Justice Field says:

"If a state permits a foreign corporation to do business within her limits, and at the same time provides that in suits against it for business there done, process shall be served upon its agents, the provision is to be deemed a condition of the permission; and corporations that subsequently do business in the state are to be deemed to assent to such condition as fully as though they had specially authorized their agents to receive service of the process. Such condition must not, however, encroach upon that principle of natural justice which requires notice of a suit to a party before he can be bound by it."

In Lonkey v. Keyes S. M. Co., 21 Nev. 312, 321, 31 Pac. 57, 60 [17 L. R. A. 351], where it was held that service of process on a foreign corporation, made by delivering a copy to the deputy secretary of state, was bad because the statute at that time authorized service on the secretary of state only, it was said:

"Until a defendant in an action is served with process in one of the modes pointed out by the statute, and given a reasonable opportunity of being heard in defense of his rights, a court has no power to divest him of his property."

In Roller v. Holly, 176 U. S. 398, 409, 20 Sup. 410, 414 [44 L. Ed. 520], service of process was made on a defendant residing in Virginia, requiring him to appear within five days after service to answer in a foreclosure suit pending in Texas. This service was made strictly in accordance with the statutes of Texas. It was held that five days' notice under the circumstances was not reasonable notice, or due process of law. The court said:

"That a man is entitled to some notice before he can be deprived of his liberty or property is an axiom of the law to which no citation of authority would give additional weight. * * * It is manifest that the requirement of notice would be of no value whatever unless such notice were reasonable and adequate for the purpose."

The same principle is applied in those cases in which it is held that, where a service is permitted by statute on a *local agent* of a foreign corporation, it must be on an agent upon whom it may fairly be presumed the duty rests, by virtue of his official position or his employment, to communicate the fact of service to the governing power of the corporation. St. Clair v. Cox, 106 U. S. 350, 359, 1 Sup. Ct. 354, 27 L. Ed. 222; Central Georgia R. Co. v. Eichberg, 107 Md. 363, 68 Atl. 690, 694, 14 L. R. A. (N. S.) 389, 392; Strain v. Chicago Portrait Co. (C. C.) 126 Fed. 831, 834; 5 Thomp. on Corp. § 6759.

[13] Service of process on an agent otherwise competent, whose relations to the plaintiff, or to the claim, are such as to make it to his interest to suppress the fact of service, is insufficient. 32 Cyc. p. 554; Atwood v. Sault Ste. M., etc., Co., 148 Mich. 224, 111 N. W. 747, 118 Am. St. Rep. 576.

In Southern Ry. Co. v. Simon (C. C.) 184 Fed. 959, there was a bill in equity in the Circuit Court for the Eastern District of Louisiana to restrain execution of a judgment for personal injuries suffered in Alabama. The judgment had been obtained in a Louisiana state court against the defendant railroad company, alleged then to be doing business in that state. The Louisiana statute, like that of Nevada, required every foreign corporation doing business in that state to designate an agent upon whom service of process could be made, and provided, in the event of noncompliance, that service of process could be made on the secretary of state with the same effect as if the corporation had been personally served. Service was made on the assistant secretary of state, who merely filed the process, and made no effort to notify the company. The company, though doing business in the state, had no actual knowledge of the pendency of the action until after final judgment. The court held, in view of the failure of the statute to provide for actual notice to the corporation, either within or without the state, by mail or otherwise, that the judgment of the state court was rendered without due process of law, and was therefore void, and said:

"It is fundamental that the method of citation should be fairly calculated to bring home to the defendant actual notice of the pendency of the action and allow him a reasonable time to put in his defense."

In the course of this opinion the following comment on the same statute was quoted from Gouner v. Mississippi Valley Bridge & Iron Co., 123 La. 964, 49 South. 657.

"There is a feature in the law last cited that is peculiar, and adds something to its illegality when it is proposed to maintain a service, as in this case. As applying exclusively to foreign corporations absent from the state, within the extreme meaning of the word 'absentee' we will state: This law makes no provision whatever for the service on the defendant. The officer may decline to communicate with the person sued, and give no notice whatever, not even by mail. A judgment might be obtained without the least knowledge of the person sued. Under the phrasing of the statute, the duty of the officer begins and ends in his office. If such a judgment were rendered, it could receive no recognition whatever at the place of the domicile."

In Pinney v. Providence Loan, etc., Co., 106 Wis. 396, 82 N. W. 308, 50 L. R. A. 577, 80 Am. St. Rep. 41, the Supreme Court of Wis-

consin had under consideration a statute providing that, until a domestic private corporation files with the register of deeds of the county in which its principal place of business is located a list of its officers on whom service of process may be had, such service may be made by leaving a copy of the process with the register of deeds. This statute was held to be void, as contravening the constitutional provision that no person shall be deprived of his property without due process of law. The suit was to quiet title by the holder of a tax deed, and therefore in rem. The defendant, a domestic corporation, having failed to file a list of its officers, service was made on the register of deeds, who filed a copy of the summons and complaint, but paid no further attention to the matter. No attempt was made to notify the defendant. Seven months after judgment by default, the company appealed. The court held that the service was well calculated to conceal from the officers and agents of the corporation the fact that an action had been commenced, and said:

"While foreign corporations may be permitted to do business within the state upon certain conditions, or be excluded altogether, and while domestic corporations may be subject to reasonable regulations and control, yet neither can be deprived of its property without due process of law. Undoubtedly the Legislature may, as it has in certain cases, authorize constructive service of summons to be made upon corporations, as well as individuals, especially where the action concerns property located within the state; but the method adopted should be reasonably calculated to bring notice home to some of the officers or agents of the corporation, and thus secure an opportunity for being heard and making a defense before the determination. Such service was not secured 'by delivering to and leaving with the register of deeds * * * true copies' of the summons and complaint, as prescribed by the portion of the statute quoted."

The decision in Olender v. Crystalline Mining Co., 149 Cal. 482, 86 Pac. 1082, is much relied on by the defendant in this case. The statute of California is like our own in providing for service on the secretary of state, without further notice, when a foreign corporation owning property or doing business in the state fails to appoint an agent upon whom service may be made. On appeal from a default judgment, and from orders overruling motions to quash service of summons and set aside default, the court said the defendant could have had notice of the action by complying with the statute and appointing an agent, but by failing to do so it had indicated its willingness to have such notice given to the secretary of state, consequently the statute was not invalid as depriving the defendant of property without due process. It appeared, however, that the company in that case had notice of the action in season to make, and did make, motions to quash the service of summons and to set aside the default judgment. Attention was called to the defendant's failure to pursue in its motion the relief provided in section 473 of the Code of Civil Procedure. If the company had averred in the lower court that the default judgment was taken through inadvertence or surprise, and that it had a good defense, and desired to try the case on its merits, the trial court would very probably have set aside the default; but, said the court, "the defendant does not ask to defend, it merely asks that it be allowed to escape the necessity of making any defense."

As I have already said, actual personal notice is not possible in every case; hence constructive service, and the theory that men are expected to be informed as to what concerns their real estate. Under the most carefully drawn and comprehensive statutes providing for constructive service, it is conceivable that property may be lost by judicial proceedings of which parties adversely affected have no notice. But as Justice White says in American Land Co. v. Zeiss, 219 U. S. 67, 31 Sup. Ct. 207, 55 L. Ed. 82.

"The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals."

Under the circumstances, the method of service employed in this case was neither just nor reasonable. It was not calculated to bring notice home to the agents or officers of the mining company, or to afford them an opportunity to be heard, or to make a defense. The practical effect of the statute is the designation of a person to whom a copy of process may be given, and of whom the foreign corporation, if it be so moved, may make inquiry as to whether it has been sued. The burden of providing due process is thus, in part, at least, shifted from the plaintiff to the defendant. The statute provides a form of service by which it is quite possible for a plaintiff, who is familiar with the business and affairs of the defendant, and consequently knows where the defendant may be served personally or by mail, to obtain a judgment without defendant's knowledge. If the statute were not so designed, if it were not the purpose to substract something from the full measure of constitutional due process, why was not the secretary of state required to make some attempt to give notice, particularly when the plaintiff is fully informed as to defendant's residence and whereabouts?

The dismissal of the former case in this court, the commencement of the same suit two days later in the state court, without the knowledge of the King Tonopah Mining Company, the absence of any effort or attempt to notify the company, either by the secretary of state or by the plaintiff himself, the fact that it was a Utah corporation, and that the plaintiff, Lynch, in his affidavit, subscribed and sworn to the very day the first suit was dismissed, states that "since 1907, and at the present time, affiant has been, and now is, familiar with the business and affairs" of the King Tonopah Mining Company, all indicate a desire on the part of Lynch to give the transaction no more publicity than was absolutely and imperatively necessary.

Under all the conditions, I am constrained to hold that the service in question did not constitute due process of law. I shall therefore reopen the case, in order that evidence may be introduced on the issue raised by plaintiff's allegations that he had, and has, a good and sufficient defense on the merits to the action in the state court.

On the application of either party a day will be fixed when a hearing may be had.