KNAPP et al. v. BULLOCK TRACTOR CO.

VANCE v. CHICAGO PORTRAIT CO. et al.

(District Court, S. D. California, S. D.  May 19, 1917.)

Nos. 545, 570.

1. COMMERCE ⊜81—FOREIGN CORPORATIONS—LIABILITY TO BE SUED.
   That a foreign corporation is engaged in interstate commerce does not render it immune from the assertion of jurisdiction by the state courts in any state in which it is engaged in doing business, and in which proper provision is made by law for the assertion of jurisdiction over it.
   [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 45.]

2. CORPORATIONS ⊜642(1)—FOREIGN CORPORATIONS—"DOING BUSINESS"— WHAT CONSTITUTES.
   A foreign corporation is "doing business" within a state, where it is engaged in a more or less continuous effort, not merely casual, sporadic,

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

or isolated, to conduct and carry on within such state some part of the business in which it is usually and generally engaged.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520, 2521.

For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

3. CORPORATIONS �köm642(4)—FOREIGN CORPORATIONS—DOING BUSINESS—WHAT CONSTITUTES.

An Illinois corporation was selling farm tractors in California through resident sales agents, who were given exclusive territory, in which they were required to solicit and procure orders. Their contracts required them to receive all goods shipped, to deliver, set up, and start every machine sold, and instruct the purchaser how to adjust it, and to be responsible for all tractors purchased. Orders for machines provided that they were not to be valid until accepted by the company, and contained a warranty and an agreement to furnish free of charge any part proving defective within one year, and by its agreement with its agents the company agreed to furnish a supply of repairs or spare parts. The company reserved the right to make sales at the San Diego exposition, and within two years its president had been in the state superintending and directing the management of its affairs, and various directors, employés, and agents, including its general manager, had assisted in demonstrating, operating, and repairing tractors, and on one occasion a sale had been made by the general manager. Held, that the corporation was doing business in California.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2524.]

4. CORPORATIONS ⊚köm642(4)—FOREIGN CORPORATIONS—DOING BUSINESS—WHAT CONSTITUTES.

An Illinois corporation was carrying on the business of enlarging portraits and selling frames under a system of contracts providing for the employment of district managers, road managers, solicitors, etc., to secure orders for enlarging portraits, and to secure the purchase of and payment for frames in which portraits were contained; its annual business in California on the sale of frames exceeding $10,000. It had a road manager in California, who had general supervision of the soliciting and securing of orders, and of the work of salesmen, solicitors, etc., and was required to devote his entire time to its business. Held, that it was doing business in California.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2524.]

5. CORPORATIONS ⊚köm668(4)—FOREIGN CORPORATIONS—SERVICE OF PROCESS— "BUSINESS AGENT."

A resident sales agent of a corporation engaged in selling farm tractors, who was given exclusive territory, in which he was required to canvass for orders, and who was required to receive all goods shipped, and to deliver, set up, and start every machine sold, and to instruct purchasers, and who was to be furnished a supply of repairs or spare parts, was a "business agent" of such corporation, upon whom service of process was properly made, under Code Civ. Proc. Cal. § 411, providing that, in suits against a foreign corporation doing business and having a managing or business agent within the state, service may be made by delivering a copy of the summons to such agent.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2610.

For other definitions, see Words and Phrases, First and Second Series, Business Agent.]

6. CORPORATIONS ⊚köm668(4)—FOREIGN CORPORATIONS—SERVICE OF PROCESS.

Where service of process could not be made upon the business agent of a corporation in charge of its principal place of business within the state, because the action was brought by such business agent, process was

properly served under Code Civ. Proc. Cal. § 411, on another business agent located elsewhere within the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2610.]

7. COURTS ⬅️366(2)—FEDERAL COURTS—STATE LAWS AS RULES OF DECISION. The decisions of state courts as to the validity of state statutes are not binding upon the federal courts, so far as rights secured under the federal Constitution are concerned.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 954.]

8. CONSTITUTIONAL LAW ⬅️309(3)—CORPORATIONS ⬅️668(12)—FOREIGN COR PORATIONS—SERVICE—DUE PROCESS OF LAW. Civ. Code Cal. § 405, requiring every foreign corporation to file with the secretary of state a designation of some resident of the state upon whom process may be served, and providing that process may be served on the person so designated, but if no such person is designated then on the secretary of state, violates the due process clause of the Constitution, so far as it authorizes service on the secretary of state without requiring him to give any notice to the corporation.

[Ed. Note.—For other cases, see Constitutional Law; Cent. Dig. §§ 929. 930; Corporations, Cent. Dig. § 2619.]

9. CORPORATIONS ⬅️668(7)—FOREIGN CORPORATIONS—SERVICE OF PROCESS— OFFICERS AND AGENTS. Under Code Civ Proc. Cal. § 411, authorizing service upon a foreign corporation having a managing or business agent, cashier, or secretary within the state, by serving such agent, cashier, or secretary, service on the secretary of a foreign corporation in the state in his private capacity on a pleasure trip, and not as a representative of the corporation, was not sufficient.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2613.]

10. CORPORATIONS ⬅️668(5)—FOREIGN CORPORATIONS—PROCESS—BUSINESS OR MANAGING CONDUCT—BUSINESS AGENT. A foreign corporation's resident road manager for an entire state, required to devote his entire time and attention to its business, and having general supervision of its business and of its salesmen, crew foremen, collectors, deliverymen, and district managers, is a managing or business agent, upon whom process may properly be served, under Code Civ. Proc. Cal. § 411.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2611.]

11. CORPORATIONS ⬅️668(16)—PROCESS—QUASHING—ISSUING NEW PROCESS. Where, on a motion to quash service of process upon a foreign corporation, it appears that such corporation has a business or managing agent within the state upon whom process might be served, the court, in quashing an invalid service, may authorize the issuance of process, in order that proper service may be had upon such managing agent.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2627.]

At Law. Two actions—one by J. Herbert Knapp and another, partners doing business as Knapp & Black, against the Bullock Tractor Company, and the other by L. F. Vance against the Chicago Portrait Company and others. On motions to quash the service of summons. Service quashed in part, sustained in part, and new process ordered.

These two cases, though entirely unrelated in other respects, present the same general question of law, and for that reason, and for purposes of brevity, have been considered and will be decided together. The question in each case is: When is a foreign corporation "doing business" within the state of California to an extent sufficient to give the courts of that state jurisdiction to render a judgment in personam, and upon whom may service be made sufficient to bind such foreign corporation? Both of these actions were com-

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

menced in the superior court of Los Angeles county, Cal., and both have been removed to this court and are before the court on motions to quash service of summons.

In the Bullock Case it appears, from the affidavits on file in support of and in opposition to the motion, that the defendant corporation is a corporation organized and existing under the laws of Illinois and having its principal place of business in Chicago. It is engaged in the manufacture and sale of certain farming machinery known and described as "Bullock tractors," and which it sells in different states of the Union, through the agency and medium of certain "sales agents," who are appointed by it, and who act pursuant to contracts, the terms of which are set out in affidavits. It is the claim of defendant, of course, that it is not doing business in California; that it is merely engaged in interstate commerce, selling its tractors in California through the agency of factors or commission merchants. The true facts, however, as proven by the language of the contracts entered into by defendant, negative this contention. The contracts, one of which was held by plaintiffs and the other by the California Hydraulic Engineering & Supply Company, of San Francisco, upon whom service of summons was had in the action, are substantially similar in their terms. They purport to have been entered into by the defendant at Chicago and by the sales agents at their places of business in California, and contain a provision whereby the plaintiffs in the one instance, and the Engineering & Supply Company in the other, were appointed "sole and exclusive sales agents," under the terms and conditions of the contract, in certain described territory in California, to wit, the southern half of the state in the first contract, and the northern half in the second. Other material terms of the contracts are appended in the margin.[1]

The order blank referred to in paragraph 4 of the contract is also set out in full in the affidavits, and shows an order addressed to the Bullock Tractor Company, to be signed by the purchaser, and not to be valid until accepted

---

[1] "Said agent, for the commission herein agreed to be paid, agrees as follows:

"(1) Said agent hereby agrees to thoroughly and with due diligence canvass for the sale of the machines covered by this contract all the territory herein mentioned, and the company agrees to furnish free to such agent such advertising matter and order blanks as it may consider necessary, and said agent agrees to receive, pay transportation charges on, and diligently distribute said advertising matter.

"(2) To receive all goods shipped under this agreement at the written request of said agent, to pay freight on same from factory, keep the same well housed and in good condition, and to make good any damages resulting from the improper handling or storage of same until sold or reshipped, to keep the same free from all charge and expense to said company, including all taxes which may be assessed on such goods carried over in said agent's possession from the preceding year, to collect from the purchaser the freight on all goods sold, and to make no charge for freight handling, storage, or other expenses; but if such company shall remove or transfer any goods received under this contract, said agent shall be entitled to the actual freight paid by him thereon.

"(3) To deliver, set up, and fairly start every machine sold, and to instruct the purchaser how to adjust it to work in the different conditions, to pay all livery expenses that may be incurred by experts or salesmen furnished by said company while assisting said agent, provided the same are furnished at the written request of or with the consent in writing of said agent.

"(4) To take a signed order from each purchaser on blanks furnished by said company, at the list price hereinafter specified, said order subject to the approval and acceptance of the company, and to use or give no warranty other than the regular warranty which is incorporated in said order blanks furnished by said company and printed on the back of this contract and made a part thereof.

"(5) Said company agrees to pay to said agent as commission on tractors sold in accordance with the terms of this contract, or through any agency or means within said territory during the life of this contract, fifteen per cent. (15%) discount from the list prices herein named as follows: f. o. b. Chicago.

| | | | |
|---|---|---|---|
| 75-55 H. P. "Giant" | Creeping | Grip | .....$4250.00 |
| 50-35 H. P. "Senior" | " | " | .....$3500.00 |
| 30-20 H. P "Junior" | " | " | .....$2000.00 |
| 15-10 H. P. "Baby" | " | " | .....$ 950.00 |

"It is further mutually agreed, however, that *said company may sell tractors at the Panama California Exposition at San Diego and turn over any and all orders to said agent,* made to parties in territory herein covered by this contract, and said agent shall

by the Tractor Company, and contains upon its back a written warranty over the name of the defendant, wherein defendant company warrants its tractor, and "agrees to furnish free of charge any part that may prove defective within one year," and provides for the sending by the company of an expert, who shall put the tractor "in working order." The cost of sending the expert is to be borne by the company if the trouble be due to defective material or workmanship; otherwise, to be borne by the purchaser. Said warranty also provides that, if the tractor could not be made to work well, the purchaser should return it to the agent, and the price was thereupon to be refunded. In addition, it appears from the affidavits that within two years last past the president of the Tractor Company had himself been in California "superintending and directing the management of the affairs in said state," and giving directions for the remodeling of said tractors, in order to overcome certain defects detected in the operation thereof; that in 1915 and 1916 sundry directors, employés, and agents, including the general manager of the company, came into the state of California, assisted in demonstrating, operating, and repairing tractors, and in one instance the general manager himself conducted the negotiations for the sale, and sold to a purchaser one of the tractors out of the stock on hand in plaintiff's storeroom.

In the Chicago Portrait Company Case it appears that the defendant company, which is not unknown in the federal courts (Caldwell v. North Carolina, 187 U. S. 622, 23 Sup. Ct. 229, 47 L. Ed. 336; Strain v. Chicago Portrait Co. [C. C.] 126 Fed. 831), and whose business may be fairly and substantially described by a reference to Dozier v. State of Alabama, 218 U. S. 124, 30 Sup. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264, and Davis v. Commonwealth, 236 U. S. 697, 35 Sup. Ct. 479, 59 L. Ed. 795, is an Illinois corporation, with its headquarters and place of business in Chicago, in that state. It carries on a very extensive selling campaign for enlarged portraits and frames, and has a very complicated and comprehensive system of contracts in vogue providing for the employment throughout the United States of "district managers," "road managers" "crew managers," "solicitors," "collectors," "deliverymen," and other persons who may be required or called upon to secure orders for

---

receive a commission of 5 per cent. on all tractors so sold at said Exposition to parties in his district.

"The commission shall be paid on machines only when sold and settled for, and none shall be paid on machines returned, nor on orders not filled, nor on repairs furnished gratis on machines.

"Said agent shall receive as commission on all repairs for tractors or attachments 25 per cent. off the list prices thereof, and said agent agrees to pay all freight and express on same.

"(6) Said agent agrees to be responsible for all tractors purchased and ordered in writing through him that may be shipped under this contract, and to make settlement promptly for same at the net cash price herein named, after deducting the said commission on all machines so ordered in writing by him under this contract as herein provided.

"Said company agrees to furnish such a supply of repairs or spare parts as it may be necessary to properly provide for the requirements of the trade in the territory covered by this contract, and said agent herein agrees to exercise reasonable diligence and care with reference to all repair parts so shipped under this contract, and to make an accounting to said company of all repair parts semiannually, and to pay for all repairs sold from such stock of repairs under his care, less the commission as herein provided.

"It is expressly agreed between the parties hereto *that all machines ordered, repair parts, or goods shipped under this contract, shall remain and be held by said agent as the exclusive property of said company until the purchase money shall have been paid in full, and said company may at any time without notice, take possession of the same.*

"(7) Said company agrees to use its best efforts to complete and ship all machines ordered, and shall not be held responsible for damages in case of the inability of said company to furnish the goods or any part of them.

"(8) It is further agreed that, should this contract be terminated by expiration or otherwise, said agent will hold any unsold machines, attachments, repairs, or other property, subject to the company's order for a period of not to exceed 90 days from expiration, without charge.

"(9) It is further agreed that this contract shall not be valid and binding upon said company until the same is approved by an officer of the company at its offices in Chicago, Illinois, and that it cannot be changed in any of its provisions by any person without the written approval of an officer of the company at Chicago, Illinois." (Italics supplied.)

enlarged portraits, and, what apparently is of more importance, secure the acquiescence of purchasers to the purchase and payment of the frame in which the portrait is contained. The annual business of the company, in California, on the sale of frames alone, and exclusive of portrait enlargements, exceeds $10,000. The contract between the defendant and its "road manager for the state of California" is in the record, and shows that such road manager, one Frank S. Huffman, is to have general supervision in the matter of "soliciting and securing orders for the enlargement of pictures and of the procuring of orders for frames and the delivering of the same, and of advising, counseling, or directing and encouraging others so engaged, either as salesman, crew foreman, collector, deliveryman, or district manager." The contract further provides that said Huffman would "devote his entire time and attention to first party's business." The contract also contained this language, which is very significant, to wit: "It is further agreed that the business of first party is carried on and conducted in all the states and territories of the United States of America."

In the Bullock Case the action was brought to recover damages for breach of warranty with respect to tractors handled by plaintiffs for defendant. In the complaint it was alleged, inter alia, that the defendant "is, and at all times herein mentioned has been, doing business in the state of California; that it has and maintains an office at No. 157 North Los Angeles street, in the city of Los Angeles, in the county of Los Angeles, and state aforesaid, which is its principal place of business in the said state of California." Apt allegation was also made to the effect that the company had not complied with the provisions of section 405 et seq. of the Civil Code of the state of California, hereinafter referred to. Service of summons was made and due return thereof had upon the California Hydraulic Engineering & Supply Company, as "business agent" of defendant, and also upon the secretary of state of California.

In the Chicago Portrait Company Case service was had upon one S. M. Paine, who admittedly is the secretary of defendant corporation, and an officer upon whom, ordinarily, under the laws of the state of California (section 411 C. C. P.), service could be made. It is apparent, however, that the said Paine resides and has his office in the state of Illinois, and that, though he was served in the state of California, it was while he was in the state of California on a short "pleasure trip" for a vacation with his wife and family, and while he at no time, as seems to be fairly deducible from the proofs, was engaged in transacting business of, or in any wise representing, defendant company. The claim is made by plaintiffs that Paine came to California, not solely on "pleasure," but to transact business for the company, including the adjustment of the very transaction sued on herein. This is but the conclusion, apparently, of plaintiff, and is met by positive denial of Paine. There is no statement in the affidavits as to what he actually did while here.

Seymour L. McCrory, of Los Angeles, Cal., for plaintiffs Knapp & Black.

Schweitzer & Hutton, of Los Angeles, Cal., for plaintiff Vance.

Bicksler, Smith & Parke, of Los Angeles, Cal., for defendant Bullock Tractor Co.

Geo. H. Woodruff and Clyde C. Shoemaker, both of Los Angeles, Cal., for defendants Chicago Portrait Co. and others.

BLEDSOE, District Judge (after stating the facts as above). The contentions of defendants in both cases seem to be directed to the point that, because they are engaged in interstate commerce, they are not "doing business" in the state of California within the terms of the law of said state providing for service of summons. Section 411 of the Code of Civil Procedure of California reads:

"The summons must be served by delivering a copy thereof as follows: * * * 2. If suit is against a foreign corporation, or a nonresident joint stock company or association, doing business and having a managing or business agent, cashier or secretary within this state· To such agent, cashier, or secretary. * * * 6. In all other cases to the defendant personally."

And much, if not most, of the argument has been expended in the effort to cite a multitude of cases to the effect that defendants are engaged in interstate commerce, and therefore are not amenable to the laws of the state of California.

[1] Without in any wise attempting to refer to these authorities, it suffices to say that, since the decision in International Harvester Co. v. Kentucky, 234 U. S. 579, 587, 34 Sup. Ct. 944, 58 L. Ed. 1479, the fact that a foreign corporation may be engaged in interstate commerce does not in any wise serve to render it immune from the assertion of jurisdiction by the state courts in any state in which it may be engaged in doing business, and in which appropriate provision is made by the law thereof for the assertion of jurisdiction over it. Atkinson v. U. S. Operating Co., 129 Minn. 232, 152 N. W. 410, L. R. A. 1916E, 241; Armstrong Co. v. N. Y. Central, 129 Minn. 104, 151 N. W. 917, L. R. A. 1916E, 232, Ann. Cas. 1916E, 335. Out of the multitude of authorities cited, and which have been examined by the court in the course of its labors, no really satisfactory, comprehensive, and scientifically accurate determination of what is necessary or may be sufficient to constitute "doing business" in a state has been encountered. In cases like those at bar, in which the corporation obviously is seeking to do all the business it can, and yet all the while escape the jurisdiction of the local tribunals, it probably would not do to accept the general statement indulged in by the Supreme Court in St. Louis Ry. Co. v. Alexander, 227 U. S. 218, 227, 33 Sup. Ct. 245, 248 (57 L. Ed. 486, Ann. Cas. 1915B, 77), where Mr. Justice Day declared:

"In a general way it may be said that the business must be such in character and extent as to warrant the inference that the corporation had subjected itself to the jurisdiction and laws of the district in which it is served and in which it is bound to appear when a proper agent has been served with process."

In so far as that may seem to imply a conscious "subjection" of itself to the "jurisdiction and laws of the district," it could hardly ever occur in a case like the ones at bar that the inference could be drawn. Much more compelling language was indulged in by the same court in the International Harvester Case, supra, where the same justice declared:

"We are satisfied that the presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the state."

In similar vein, Mr. Justice Brandeis in a recent decision (Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710, decided March 6th, 1917) says:

"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in

such manner and to such extent as to warrant the inference that it is present there."

[2-4] So, also, it was said by Judge Hawley, of this circuit, in Doe v. Springfield Boiler & Mfg. Co., 104 Fed. 684, 687, 44 C. C. A. 128, 131:

"The general consensus of opinion is that the corporation must transact within the state some substantial part of its ordinary business by its officers or agents appointed and selected for that purpose, and that the transaction of an isolated business act is not the carrying on. or doing business in a state."

Just what may be meant in that statement by the phrase "some substantial part of its ordinary business" is perhaps indefinite; but I think, upon reason and authority, it may be said that if the corporation is engaged in a more. or less continuous effort, not merely casual, sporadic, or isolated, to conduct and carry on within the state some part of the business in which it is usually and generally engaged, it may be said with due and becoming propriety to be "doing business" within such state. Copper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Vaughn Machine Co. v. Lighthouse, 64 App. Div. 138, 71 N. Y. Supp. 801; Neyens v. Worthington, 150 Mich. 580, 114 N. W. 404, 18 L. R. A. (N. S.) 142; Penn Collieries v. McKeever, 183 N. Y. 98, 75 N. E. 935, 2 L. R. A. (N. S.) 127.

Within these limits and upon the facts adduced in the cases at bar, there can be no conclusion other than that each of the defendant corporations is doing business within the state of California. The other questions in the case are as to the sufficiency of the service had.

[5, 6] In the Tractor Company Case service was had upon a corporation that was in every sense of the word a "business agent" of the defendant in California. Some criticism is indulged in because of the fact that the complaint alleges, as adverted to hereinabove, that defendant's principal place of business in California was in Los Angeles. Obviously, however, no service could have been made upon defendant's business agent at its place of business in Los Angeles. So to do would have been for plaintiffs to have served themselves in a suit by them against defendant. Such would doubtless have failed to comply with the due process requirements of the law. St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222. There is no reason, however, why, though defendant's principal place of business in California may have been, as alleged, in Los Angeles, service could not have been made upon an appropriate business agent located elsewhere within the state.

Although, in view of the holding of the sufficiency of the service on the business agent of defendant, the question of the sufficiency of the service upon the secretary of state is not necessary to a decision herein, yet, since motion has been made to quash it, I am constrained to hold that such motion should be granted. Such service was had pursuant to the provisions of section 405 of the Civil Code of California, which is contained in title 1, part IV, of said Code, entitled "Foreign Corporations," and provides as follows:

"*Designation of Person on Whom Process may be Served—Service on Secretary of State Valid, When.*—Every corporation other than those created by

or under the laws of this state must, at the time of filing the certified copy of its articles of incorporation, file in the office of the secretary of state a designation of some person residing within the state upon whom process issued by authority of or under any law of this state may be served. A copy of such designation, duly certified by the secretary of state, is sufficient evidence of such appointment. Such process may be served on the person so designated, or, in the event that no such person is designated, then on the secretary of state, and the service is a valid service on such corporation."

This section would seem to be in conflict with the provisions of section 411 of the Code of Civil Procedure heretofore referred to, which provides how summons in a civil action *"must* be served," and in the face of such conflict it might be contended with some show of reason that, in a case involving the question of sufficiency of service of summons, the provisions of the Code of Civil Procedure should control. However, that contention seems to be foreclosed by the decision of the Supreme Court of the state of California in Olender v. Crystalline Mining Co., 149 Cal. 482, 484, 86 Pac. 1082, where the court seems to hold that the act providing for service upon the secretary of state is a "substitute" for the service formerly prescribed by the Code of Civil Procedure. In my judgment, however, in so far as section 405, supra, purports to provide for service of process upon a foreign corporation by substituted service upon the secretary of state, it fails to comply with the due process clause of the federal Constitution and is, to that extent, void.

[7] I am aware, of course, that this precise question was passed upon adversely to the conclusion just announced by the Supreme Court of California in the Olender Case, supra. I am also aware, however, that it is the duty of this court to declare the law, in so far as rights secured under the federal Constitution are concerned, untrammeled by decisions of state courts, which in this respect, at least, are not binding upon it.

[8] It is noticed that no provision is made in the section of the Civil Code referred to for the sending of any notice by the secretary of state to the corporation sought to be subjected to the jurisdiction of the state tribunal. In this respect the case is essentially different from that of Mutual Reserve Association v. Phelps, 190 U. S. 147, 158, 23 Sup. Ct. 707, 47 L. Ed. 987, and is brought within the terms of the decisions in King Tonopah Mining Co. v. Lynch (D. C.) 232 Fed. 485; Southern Ry. Co. v. Simon (C. C.) 184 Fed. 959, and Pinney v. Providence Loan Co., 106 Wis. 396, 82 N. W. 308, 50 L. R. A. 577, 80 Am. St. Rep. 41. The Circuit Court in the Simon Case, supra, states the controlling principle in simple yet apt language:

"It is fundamental that the method of citation should be fairly calculated to bring home to the defendant actual notice of the pendency of the action and allow him a reasonable time to put in his defense."

If the California statute contained some provision, such as was found in the Phelps Case, supra, for a notification by the secretary of state of the defendant corporation of the fact of service and the pendency of suit, it then might fairly be presumed that official action in such behalf would be promptly and properly performed, and that defendant would in due course be given notice of the pending litigation.

The fact that no provision was made for direct appointment by the foreign corporation of the secretary of state as its agent to receive service of process I consider to be immaterial. If it came into the state to do business, presumably it came in intending to comply with and be bound by the laws of the state regarding such a corporation as it was, and it would not be unreasonable to hold that it accepted the privilege of doing business subject to the limitation that service upon the secretary of state, followed by notice to it, should be considered as sufficient. However, the California statute like the Nevada statute and the Louisiana statute contains no provision for notice to the defendant, and in that respect it could easily, and would probably, be true, as is so clearly stated by Judge Farrington in the Lynch Case, supra, that defendant would have absolutely no knowledge at all of the existence of the litigation or of the fact of service. To intimate that, under such circumstances, it nevertheless may be bound, and a valid judgment secured against it, shocks the conscience and demonstrates that such attempted service constitutes a want of compliance with the due process clause of the Constitution. For these reasons I am constrained to hold, as above indicated, the provision of section 405 above referred to unconstitutional.

[9] Service in the Portrait Company Case, though made upon the secretary of the corporation, was not made, in my judgment, in compliance either with the law of the state of California or the general law controlling the situation. Subdivision II of section 411 of the Code of Civil Procedure, heretofore referred to, provides for service upon the secretary of a foreign corporation "doing business and having [maintaining?] a managing or business agent, cashier, or secretary within this state." This I am persuaded means that service pursuant to this section can be had upon one of the officers mentioned only in the event that he is engaged in the state in a representative capacity for the corporation in the capacity indicated.

Under the general law it would seem that the mere casual presence of an officer of the corporation in the state, not engaged in the business of the corporation, will not suffice to warrant service of process as against the corporation upon him. St. Clair v. Cox, 106 U. S. 350, 358, 1 Sup. Ct. 354, 27 L. Ed. 222. It seems clear from the evidence adduced that Paine was in California purely in his private capacity on a pleasure trip, and not in any wise as representative of defendant corporation. The secretary of a corporation, away from its domicile, "does not carry the corporation in his pocket." Louden Machinery Co. v. American Malleable Iron Co. (C. C.) 127 Fed. 1008. For this reason I am constrained to hold that motion to quash service of summons as made upon him should be granted. Premo Co. v. Jersey-Creme Co., 200 Fed. 352, 118 C. C. A. 458, 43 L. R. A. (N. S.) 1015.

[10, 11] It is apparent, from the papers before the court, that there is a managing or business agent of the defendant Portrait Company residing and conducting the business of the corporation in California, to wit: Frank S. Huffman, road manager for entire state, located in Oakland, Cal., and it would seem as if valid service of process might be had upon him. He seems to be of sufficient rank to justify the

conclusion that it is "reasonably certain that the corporation would be notified of the service." Denver & R. G. R. R. v. Roller, 100 Fed. 738, 741, 41 C. C. A. 22, 25 (49 L. R. A. 77). The question has not been presented or argued in the case, but it would seem, upon reason, as if it were competent for the court now to authorize the issuance of process out of this court in order that service may be had upon the managing agent of defendant aforesaid. Clark v. Wells, 203 U. S. 164, 27 Sup. Ct. 43, 51 L. Ed. 138.

Appropriate orders quashing service of summons upon the secretary of state in the one case and upon the secretary of the company in the other will be entered and an order made providing for the issuance of process for service upon the road manager as hereinabove indicated.